STATE OF MISSOURI *ex rel.* ROBERT F. SANDERS, Relator, v. JOHN G. WEAR, Judge of the Twenty-third Judicial Circuit of Missouri, Respondent.

St. Louis Court of Appeals, June 27, 1889.

1. **Mandamus, Right to.** *Mandamus* will lie against a circuit judge to require him to take bond from one, who was appointed clerk of his court on the resignation of the incumbent of the office, and commissioned as such by the governor of the state; and this is so notwithstanding that the clerk who resigned was suspended from office by the judge, and that the judge had appointed a temporary clerk prior to the appointment by the governor, and that the validity of the appointment by the governor was contested on this ground.

2. ———. *Mandamus* lies in such case not for the determination of the validity of the governor's appointment, and the right of the appointee to the office, but for the purpose of enabling the appointee to qualify, and then enforce his title, if denied.

*Original petition for mandamus.*

WRIT ORDERED.

*Hough, Overall & Judson,* for the relator.

The respondent shows the highest evidence of right and title, *i. e.,* his commission from the governor of the

state. This commission, it is true, is not conclusive evidence of his right to the office, as that right may be contested in a *quo warranto* proceeding by another claimant or by the state. But for the purposes of this proceeding, to-wit: Requiring the respondent to do the duty which the law enjoins, it is conclusive. The contention of respondent is answered by *Beck v. Jackson*, 43 Mo. 118. The decision in the *Jackson case* also answers the argument that relator has a complete remedy by *quo warranto*. In *quo warranto*, at the relation of the state or attorney general, only, the right of the incumbent can be inquired into. *State v. Vail*, 53 Mo. 97. And the relator in this case, having the governor's commission, has the right to qualify for the office so that he can assert his own title by proceeding against the incumbent.

*W. H. Clopton*, for the respondent.

(1) This court will not issue a peremptory writ of *mandamus* unless the relator shows that he has a good title, or a perfect right to the remedy he demands. *State v. Albin*, 44 Mo. 346; *State v. Newman*, 91 Mo. 451; High Ex. L. R. [2 Ed.] sec. 10; *People v. Board*, 64 N. Y. 600; *Plowman v. Thornton*, 52 Ala. 559. The petitioner does not show that he is entitled to the office. Bragg could not resign pending his suspension and while the charges against him remain undisposed of. A suspended clerk cannot resign his office because he is not in possession of it. *Miller v. Board*, 25 Cal. 93. A resignation after charges and suspension would defeat the law imposing a penalty of one thousand dollars to use of the county on conviction as provided by section 635, Revised Statutes. (2) There was no vacancy in the office when the governor appointed the relator. And it is only to fill vacancies that the constitution and law give him the power to appoint. *State v. Lusk*, 18 Mo. 333, 337; *State v. McGrath*, 64 Mo. 141;

*State v. Boeckler*, 56 Mo. 21; *State v. Boone Co.*, 50 Mo. 324; *Walsh v. Commonwealth*, 89 Penn. St. 419; *Harrison v. Simmons*, 44 Conn. 319. The regular clerk has not resumed his office, nor has a clerk been elected; therefore the incumbent is legally entitled to the office, and the governor had no power to make the appointment. The commission of the governor is not, even if *prima facie*, title to the office. *Plowman v. Thornton*, 52 Ala. 559, 569; *State v. Neely*, 24 La. Ann. 19; *State v. Towne*, 21 *Ib.* 400. (3) Petitioner has a full, complete and adequate remedy by *quo warranto*. R. S. Mo., p. 645. Even without having his bond approved the relator may file an information in the nature of *quo warranto*, and have the question of title to the office tried. *State ex rel. v. Vail*, 53 Mo. 97. If the relator can avail himself of the statutory remedy of *quo warranto* he is not entitled to the writ. *State v. Lubke*, 15 Mo. App. 152; *State v. Marshall*, 82 Mo. 484; *State v. Horner*, 16 Mo. App. 191; *Mansfield v. Fuller*, 50 Mo. 339; Moses on Man., p. 62; High on Ex. L. R. [2 Ed.] secs. 15–16. A peremptory writ would place the relator in no better position than he now occupies. And the writ is never issued.

THOMPSON, J., delivered the opinion of the court.

This is a proceeding by *mandamus* against the judge of the twenty-third judicial district of Missouri, to compel him to fix the amount of the petitioner's bond for the office of clerk of the circuit court of Dunklin county and *ex officio* recorder of said county, and to examine the sureties presented by the petitioner, and, if the sureties are found qualified, to approve said bond.

The alternative writ, which is a mere transcript of the petition, sets up the following facts: That William G. Bragg, Jr., was duly elected and commissioned, and qualified as clerk of the circuit court of Dunklin county for a period of four years from the first day of January, 1887, and that he entered into the duties of his office as

such. That he was, on the sixth day of December, 1888, suspended from said office by the respondent, acting as judge of said court, on three several charges which need not be set out; and that the respondent appointed J. B. Blakemore to act as temporary clerk in his place, who is now discharging the duties of the office. That, on the seventh day of January, 1889, three separate informations were filed in the office of the circuit clerk of Dunklin county against the said Bragg by the prosecuting attorney of Dunklin county, for the three several offenses for which he was suspended, and that the same have ever since been and are now pending in said county. That on the twenty-second day of January, 1889, the said William G. Bragg, Jr., tendered his resignation of the office of clerk of the circuit court of Dunklin county to the governor of the state, who, on the same day, accepted the same and appointed the petitioner herein to be clerk of said circuit court to fill the vacancy occasioned by the said resignation, and who thereupon, on the same day, issued and delivered to the petitioner a commission in due and proper form for said office. That thereafter the petitioner took and subscribed his oath of office in due form of law, which oath of office was duly endorsed on his commission; and that his commission and oath of office have been shown to this court. That thereafter on the fifteenth day of May, 1889, during the vacation of said circuit court of Dunklin county, the petitioner applied in chambers to the respondent, judge of said court, and exhibited to him his commission as clerk of said court with the oath of office endorsed thereon, and applied to him to fix the amount of bond to be given by the petitioner as said clerk and *ex officio* recorder; but that the respondent then and there refused to fix the amount of such bond, stating that he declined to do so because of the pendency of the charges against the said Bragg, and that he would not fix the amount of said bond while said charges were undisposed of. That, on the same day, the petitioner

applied to the respondent and submitted to him his two bonds for circuit clerk of Dunklin county and *ex officio* recorder of said county,—his bond as circuit clerk being in the sum of twelve thousand dollars, and his bond as recorder being in the sum of six thousand dollars, which said bonds have been presented and shown to this court. That said sums, so fixed as the penalty of each of said bonds, were far more than sufficient to cover any possible defalcation in said offices, and that each of said amounts was more than three times the amount given, or required to be given by any predecessor, or any prior incumbent in said offices. That each of said bonds constituted a good and sufficient bond, as provided by law for said office of circuit clerk and recorder respectively; but that the respondent did nevertheless arbitrarily refuse to approve said bonds with the penalties in said amounts, although not denying said bonds to be good and sufficient bonds as required by law,—basing his refusal solely upon the reasons aforesaid. That, at the time of the presentation of these bonds, the petitioner brought to the respondent in chambers, as aforesaid, the sureties whose names were signed to said bonds, and offered them to him for examination, as to their qualifications as said sureties. That said sureties were then and there able to justify, each of them, in an amount of taxable property subject to execution over and above all liabilities, far in excess of the amount of the penalties of said bonds; but that the respondent nevertheless arbitrarily refused to examine such sureties as to their qualifications, or to approve said bonds, or to pass upon them in any form, but did not deny such bonds to be good and sufficient bonds as required by law, but based his refusal solely upon the reasons aforesaid. Finally, the alternative writ recites that, notwithstanding the appointment and commission of the petitioner as aforesaid and the sufficiency of his said bonds and the sureties thereon, the respondent arbitrarily refused, and still refuses, either to fix the amount

of said bonds, or to approve the same, or to examine the sureties as to their qualifications therefor, or to recognize the commission of the petitioner in any manner, or his title to his office thereunder.

A proceeding of the same nature and between the same parties was before us at the present term, numbered 4400. In that proceeding the respondent made a return, a portion of which the relator moved to strike out, which motion to strike out was sustained by this court, all the judges being present and concurring. The portion of the return thus stricken out was as follows : "Respondent denies that the said William G. Bragg, Jr., could, during the time of his suspension in office as clerk of the circuit court of Dunklin county, and while the charges aforesaid were pending against him in the circuit court of said county and undetermined, and before he had been restored to his said office, by resignation, create such a vacancy as would entitle the relator, the said Robert F. Sanders, to the right of becoming the clerk of said circuit court of Dunklin county, and of entering upon the duties of said office. Respondent denies that relator has any interest in the office of clerk of the circuit court of Dunklin county, except such interest as is contingent upon and can arise only after the charges now pending against the said William G. Bragg, Jr., in the circuit court of said Dunklin county, as hereinbefore set forth, are determined, and said Bragg adjudged not guilty thereof, or that he be otherwise discharged therefrom."

After we awarded the motion to strike out this portion of the return in the former case, the respondent set up that the bond had been tendered to him by the relator on Sunday, and, as a judge cannot be required to examine into the sufficiency of an official bond which is tendered to him on Sunday, the relator dismissed his proceeding and thereafter brought the present proceeding. The respondent, appearing by different counsel from those who represented him in the former proceeding,

now files a motion to quash the alternative writ, on the following grounds: (1) Because it appears from the terms of the said alternative writ that the relator has no right to the office of clerk of the circuit court of Dunklin county. (2) Because it appears from the terms of said alternative writ that there was no vacancy in the office of clerk of said Dunklin county circuit court on the twenty-second day of January, and that therefore the governor of the state had no power, under the constitution and laws of the state of Missouri, to appoint the relator clerk of said court. (3) Because it appears from the terms of said alternative writ that William G. Bragg, Jr., was suspended by respondent for misdemeanors in office, and that J. B. Blakemore was by respondent appointed a temporary clerk, and that said J. B. Blakemore had taken the oath, given bond, and was performing the duties of clerk of said court on said twenty-second day of January, 1889, and when said alternative writ was issued. (4) Because said relator, if he is entitled to the office of clerk of the circuit court of Dunklin county by virtue of the alleged appointment, has a full, complete and adequate remedy by *quo warranto*. (5) Because a peremptory writ of *mandamus* would place relator in no better position than he now occupies, and would subserve no useful purpose.

It appears from the recitals of the alternative writ, and from the motion to quash the same, that the grounds of the motion may be reduced to three: *First.* That the petitioner is not entitled to the office of clerk of the circuit court of Dunklin county by virtue of his commission. *Second.* That if he is entitled to the office he has a full, and adequate remedy to recover possession of it by *quo warranto*. *Third.* That a peremptory writ of *mandamus* would place him in no better pesition than that which he now occupies, and would subserve no useful purpose.

We understand both parties to concede that the title of the petitioner to the office cannot be tried in a

proceeding by *mandamus* against the judge, but that it can only be tried in a proceeding in the nature of a *quo warranto* against the incumbent of the office. And yet the weakness of the respondent's argument consists in this,—that, while we cannot try the title to the office in this proceeding, we ought to decide against the right of the petitioner to the office; that is to say, having no jurisdiction to try the question, we nevertheless ought to decide it in favor of the position which the respondent has taken. If the object of this proceeding were to compel the respondent to induct the relator into the office, the position would be well taken that he has mistaken his remedy. But such is not the proceeding. The command of the alternative writ is that the respondent shall examine into the sufficiency of the bonds, which the relator tenders to him for that purpose, and into the sufficiency of the sureties thereon, and if the bonds and sureties are found sufficient, that the respondent approve the same. On the part of the respondent able arguments have been made in favor of the view taken by respondent that the relator has shown no title to the office. We do not intend to consider that question at all, because the title of the relator to the office is not directly involved in this proceeding and could not be determined in it. The respondent has undertaken to decide it *ex parte* against the right of the petitioner, but we will not undertake to decide it either way in a proceeding by *mandamus* against the respondent.

The recitals in the alternative writ show that the respondent has taken the position that the commission of the relator is void for the reason that Mr. Bragg, the regular incumbent of the office, could not resign while charges against him were pending, and that the commission issued by the governor to the relator was therefore void. We decided in the former proceeding between these parties ( No. 4400 of this court) on the motion, above recited, to strike out parts of the return, that this was not a good defense to this proceeding. The

cause should have rested upon that decision, and the relator should not have been put to the trouble and expense of bringing another proceeding invoking from us a second decision of the same question. We shall adhere to our former decision, especially as it was made by a full court and after full consideration. But, as no opinion was written in that case, it not being necessarily a final disposition of the controversy as it then stood, we shall now state some of the reasons which lead us to that conclusion, and which now lead us to the conclusion that this motion to quash the alternative writ is not well taken.

The question is governed by the decision of the supreme court in *Beck v. Jackson*, 43 Mo. 117, a decision which, so far as we have been able to find, has never been overruled or questioned in any subsequent case. In that case the relator had been duly commissioned and appointed by the governor of the state, under a provision of the constitution, to the office of circuit clerk and *ex officio* recorder of Cape Girardeau county, to fill a vacancy caused by the death of the previous incumbent; and the judge of the court refused to receive his bonds as clerk and recorder for the reason that he had appointed another person to hold the office and had approved his bonds and had put him in possession of the office, which reasons the judge endorsed on the bonds. The court held that the relator was entitled to a *mandamus* to compel the judge to approve the bonds. In giving the opinion of the court, WAGNER, J., said: " It is now contended by the respondent that the relator has no standing in the court; that, before he can invoke the writ of *mandamus*, he must establish his right to the office at law. But this is not a proceeding asking to be inducted into the office; it is merely a demand that the respondent shall proceed to perform a duty devolved upon him by law; and, for a refusal or neglect to perform, the relator is remediless, unless the court issues the writ. The commission issued by the governor was at

least *prima facie* evidence of title to the office, and, if its validity or legality should be disputed, that question can only be determined by a proceeding in the nature of a *quo warranto*, in case Harrison (the clerk appointed by the judge) refuses to surrender the office." No sound distinction can be taken between that case and the case before us. We might stop here; but the zeal and learning, with which the view of the respondent has been pressed upon us, justify us in making some further observations.

It is said by a modern writer of reputation, speaking of the writ of *mandamus* : " Cases may, therefore, arise where the applicant for relief has an undoubted legal right for which *mandamus* is the appropriate remedy, but where the court may, in the exercise of a wise, judicial discretion, still refuse relief. Thus where, by granting the writ, the court would in effect decide questions of grave importance concerning the official *status* of parties not before the court, and who have had no opportunity of being heard, it may very properly refuse a *mandamus*, although the case presented is in other respects a proper one for the exercise of the jurisdiction." High's Extraordinary Legal Remedies, section 9. We understand counsel for the respondent to rest their objection to the granting of the relief sought for in this case partly upon the view of the law embodied in the above quotation. We do not question this view of the law at all. But here no such circumstances would attend our decision. We should not, by awarding a peremptory writ, decide the right of the relator to the office as against the present incumbent, but, under the authority of *Beck v. Jackson*, *supra*, we should merely do what he is entitled to have done in order to put him at the threshold of a contest for the right to hold the office.

Another position pressed upon us in the arguments which have been submitted in behalf of the respondent proceeds upon another passage in the same work :

" The relator must not only show a clear legal right to have the particular thing in question done, but also the right to have it done by the persons against whom the relief is sought." High's Extraordinary Legal Remedies, section 10. This is an elementary principle in the law of *mandamus*, and we do not question it at all. But, in our opinion, the relator shows such a right. The argument against this conclusion misses the mark in this : That it is all to the effect that the relator must show a right *to the office* in order that we should require the judge to approve his bonds if sufficient. This, as we have already said, would be the case if he were seeking to have us command the judge to induct him into the office. But he is not seeking any such relief. He is seeking to have us command the judge to approve his bond, and the only question which it is necessary for us to consider is, whether he shows a right to have his bonds approved, if sufficient. That he shows such a right when he exhibits the governor's commission to the office is shown by *Beck v. Jackson, supra,* to which we must again recur for an answer to this argument.

The same writer makes the following observation : "It is worthy of note that proceedings in *mandamus* do not always or necessarily determine the question of ultimate right involved, and the writ is frequently granted when it can only determine *one step* in the progress of inquiry, and when it cannot finally settle or determine the controversy." High's Extraordinary Legal Remedies, section 11. This is in conformity with the following view expressed in a case in the court of appeals of New York: " When the act,. the doing of which is sought to be compelled by *mandamus*, is the final thing, and, if done, gives to the relator all that he seeks proximately or ultimately, then the question, whether he is entitled to have that act done, may be inquired into by the officer or person to whom the *mandamus* is sought, and is also to be considered by the

tribunal which is moved to grant the *mandamus;* but where the act to be done is *but a step* towards the final result, and is but the means of setting in motion a tribunal which is to decide upon the right to the final relief claimed, then the inferior officer or tribunal may not inquire whether there exists the right to that final relief, and can only ask whether the relator shows a right to have the act done which is sought from him or it." *People ex rel. v. Canal Appraisers,* 73 N. Y. 446. This language is quite applicable to the case before us. The regular incumbent of the office has resigned his commission, and the governor of the state has commissioned the relator to hold the office until the next general election. The commission of the governor is under the circumstances *prima facie* evidence of the title of the relator to the office, and is full evidence of his right to have his bonds approved if sufficient, in order that he may be in a position to demand the possession of the office and to contest his right to the possession of it, if it is refused by the present incumbent.

This consideration also disposes of the argument that the remedy of the relator, if he has any, is by a proceeding in the nature of a *quo warranto.* This, we must repeat, would be true, if he were seeking in this proceeding to be inducted into the office. And this is in accordance with a view laid down by Mr. High, of the soundness of which we have no doubt, that the existing legal remedy which bars interference by *mandamus* must be "appropriate to the particular circumstances of the case; that is, it must be such a remedy as affords relief upon the very subject-matter of the controversy, and, if it is not adequate to afford the party aggrieved the particular right which the law accords him, *mandamus* will lie, notwithstanding the existence of such other remedy." High's Extraordinary Legal Remedies, section 17. What other relief, we may ask, can the relator have to procure *the approval of his bond* and thus place him

in a position where he can contest his right to the office with the real party entitled to be the defendant in such a contest? Can he proceed to have his bond approved by a proceeding in the nature of *quo warranto?* And if he proceeds by *quo warranto* against the present incumbent of the office without the approval of his bond, will he not be met with the answer, "You are not a qualified person, you have not given bond as required by the statutes?" Whether such an answer under such circumstances would be good—whether he would not have such an interest in the subject-matter of the office as would entitle him to institute the proceedings with the concurrence of the prosecuting attorney of the county or of the attorney general of the state, by virtue of his commission alone, especially in view of the fact that the primary question in such a case is whether the incumbent properly holds the office,—we do not undertake to determine in advance. It is enough for us to see that it is entirely seemly and proper for him to qualify by giving the required bonds before instituting such a proceeding, and that his failure so to qualify beforehand might place obstacles in his way, or prejudice him in the prosecution of such a proceeding.

So much of the motion to quash and of the arguments adduced in support of it, as proceed upon the ground that this *mandamus*, if granted, will be a useless proceeding, placing the relator in no better position than he now occupies, is shown to be untenable by *Beck v. Jackson*, already cited. This argument might be good if this were a case where the relator had not even a *prima facie* right to the office, as where he should present himself without any commission at all. But we have said that the commission of the governor, under the circumstances of the case, gives him a *prima facie* right to the office, and whether it is a sufficient right we do not undertake to decide in this proceeding, for this is not the appropriate proceeding in which to.

decide the question ; nor should the respondent have undertaken to decide it *ex parte* by refusing to approve the relator's bond.

The motion to quash the alternative writ is over-ruled, and a peremptory writ will issue.

Judge BIGGS concurs. Judge ROMBAUER is absent.