THE STATE ex rel. JOHN E. DOLMAN v. C. E. DICKEY, JOHN BRENDEL and W. D. MORRISON, BOARD OF PUBLIC WORKS, and CARL P. HOFF, Appellants.

Division Two, March 13, 1920.

1. **MANDAMUS: When Maintainable.** A litigant asking relief by mandamus must prove that he has a clear, unequivocal, specific right to have performed the thing demanded. A ministerial duty which may be enforced by the writ is one in respect to which nothing is left to the discretion of respondent in the performance of the duty.

2. ————: **Street Improvement: Substantial Compliance: By Whom Determined.** If it be conceded, or proven beyond dispute, that a

State ex rel. Dolman v. Dickey.

certain specified street improvement was constructed in substantial compliance with the contract, or that such was the only proper inference to be drawn from the proven facts, the proper city authorities have no discretion to refuse to approve and pay for it, and mandamus will avail to compel the issuance of tax bills therefor, but it is for the proper city officers, and. not for the court, to determine whether the contract was substantially complied with; and where both the statute and contract invested the board of public works with full authority to determine to what extent the contract had been complied with and there is positive evidence that ·the paving was not constructed according to the specifications, but was defective in many respects, the board cannot' be compelled by mandamus to accept the work and issue the tax bills.

3. ———: ———: Stipulations in Contract Binding: Exception. A stipulation in a contract for street improvement that the contractor "will not be entitled to receive payment for any portion of the aforesaid work or materials until the same shall have been fully completed in the manner set forth in this agreement to the satisfaction and acceptance of the Board of Public Works," being in harmony with the statute (Sec. 8840, R. S. 1909), is binding and conclusive upon the ·parties, in the absence of fraud, mistake, oversight or misconception of the facts.

4. ———: ———: Substantial Compliance with Contract: Judicial Function. When a court assumes in mandamus to hear the .evidence and decide whether the pavement of a street came up to a substantial compliance with the contract, it assumes to exercise a function which the law imposes on the proper city officers; such evidence can be considered by the court only for the purpose of determining whether those officer' acted arbitrarily in defiance of proven facts.

5. ———: ———: ———: Exception: Arbitrary Action. There is an exception to the rule that the authority to determine whether there has been a substantial compliance with the contract for a street improvement is ˙vested in the proper municipal officers, and that is that their discretion must be exercised impartially and in good faith. Where their discretion is abused and they act in a capricious and arbitrary manner. mandamus will lie to compel proper action. But mere opinion that respondents were influenced by political considerations does not establish arbitrary or capricious action.

6. ———: Capricious and Arbitrary Action: Finding of ˙Trial Court: Appellate Practice. A finding of facts by the trial court in a mandamus suit is binding upon the appellate court in a matter which the court had authority to find; but a general judgment for relator, without any specific finding and without any evidence

that the municipal authorities acted capriciously and arbitrarily in determining that the contractor had not contructed the street paving in accordance with the specifications of his contract, is not a finding that they had so acted.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen,* Judge.

REVERSED.

*Stigall, Meyer & Hamm* for appellants.

(1) Appellants herein are vested with a discretion which is not subject to review by mandamus. Merrill on Mandamus, sec. 20; Secs. 8831, 8840, R. S. 1909; McQuillin on Municipal Corporation, sec. 2548; State ex rel. v. Mier, 142 Mo. App. 310. (2) If the inferior tribunal, corporate body or public agent or officer has a discretion and acts and exercises it, this discretion cannot be controlled by mandamus. Dillon on Municipal Corporations, sec. 1489; State v. Bersh, 83 Mo. App. 657; State v. Walker, 85 Mo. App. 247; State ex rel. v. Thornhill, 174 Mo. App. 473. (3) In order for mandamus to be available it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of the respondent to perform the act required. Dillon on Municipal Corporations, sec. 1486; Gardner v. Templeton St. Ry. Co., 184 Mass. 294; State v. Nelson, 105 Wis. 111; State v. Brown, 172 Mo. 374; State v. Orear, 144 Mo. 157; McQuillin on Municipal Corporations, secs. 2545-2546. (4) The finding and judgment of the trial court in this case in view of the authorities cited above is against the law and the evidence. (a) The evidence taken in its entirety shows that the contract was not substantially complied with. (b) The evidence shows that the Board of Public Works rightly decided that the work was not properly performed and under the charter provisions governing them, refused, in the exercise of the discretion vested in them by law, to issue the tax bills for said work. (c) Appellants showed

ample and just cause why a peremptory writ of mandamus should not issue.

*John E. Dolman* for respondent.

(1) The undisputed evidence shows, including that of the city engineer himself, and it was also formally admitted on the trial, that the work to be performed under the contract in question was completed on the 21st day of November, 1914, and within the time prescribed by the contract and thereupon thrown open to public travel; and all that remained was the payment therefor in the manner prescribed by law, viz., the issue of special tax bills in favor of the contractor by the Board of Public Works, and the certification thereof by the city engineer. In no other manner could the contractor obtain payment for his work and materials. Sec. 8710, R. S. 1909. (2) After the contract has been fully performed the Board of Public Works under the statute is legally bound to provide for the issuance of the bills, and it has no discretion to refuse to do so, for the reason that in its opinion the contract has not been properly performed, that being a matter for the property owner to take advantage of in defense of his tax bills when the contractor seeks to enforce payment. It is a well-established rule that mandamus will lie to compel the performance of an act, when such act is necessary as a preliminary step to the adjudication of an individual's rights. 19 Am. & Eng. Ency. Law, 785; State ex rel. Saunders v. Wear, 37 Mo. App. 334; State ex rel. Fleming v. Shackelford, 263 Mo. 60; State ex rel. v. Homer, 249 Mo. 58; Castello v. St. Louis Circuit Court, 28 Mo. 274; State ex rel. v. Philips, 97 Mo. 339, 348; Wood v. Strother, 18 Pac. 771; Woreley v. Power, 73 Tenn. 699; Wren v. City, 96 Ind. 219; City v. Allen, 40 Ind. 347. (3) "It has been repeatedly held that mandamus will lie when there has been a palpable abuse of discretion; that discretion must always be reasonably, fairly and impartially exercised in good faith and that whether or not it has been so ex-

ercised is a question for the courts.'' It is the only remedy. State ex rel. v. Dreyer, 183 Mo. App. 481; State ex rel. v. Adcock, 206 Mo. 550; State ex rel. v. Public Schools, 134 Mo. 296; State ex rel. v. Board of Health, 103 Mo. 22. (4) The judgment of the trial court is according to the well-established law of this State. ''If he has performed his contract he is entitled to pay, and whether there has been a performance is a question of fact to be determined upon the evidence. It is true if a party makes a contract he must abide by it before he can recover on it—and if an approval by an outside party is made a condition precedent, such an approval must be obtained in a suit upon the contract. But here the action is not founded upon the contract. The contract is merely used as an instrument of proof, and if the plaintiff shows that he has done the work under the agreement he should be permitted to recover whatever he may show himself justly entitled to.'' Neenan v. Donoghue, 50 Mo. 495; American Surety Co. v. Fruin-Bambrick Co., 182 Mo. App. 674; Stockman v. Allen, 160 Mo. App. 232; Stout v. St. Louis Tribune Co., 52 Mo. 342; Kinnerk v. Phila. Ball Club, 92 Mo. App. 669. (5) Substantial compliance with the contract is all that the law requires. A strict and literal compliance with a contract prescribing the manner in which public street improvements shall be made has never been required as a condition to the acceptance of the work by the city. Steffen v. Fox, 124 Mo. 635; Cole v. Skrainka, 105 Mo. 309; Porter v. Paving Co., 214 Mo. 20; City of Maryville v. Cox, 181 Mo. App. 260; Gratz v. Wycoff, 165 Mo. App. 196; Stover v. Springfield, 167 Mo. App. 328; Trimble v. Stewart, 168 Mo. App. 276. ''The fact that this work has to be performed to the satisfaction of the commissioners and their engineer of construction is not conclusive against the plaintiff. That power cannot be exercised in an arbitrary manner, but reasonably and in accordance with fairness and good faith.'' State ex rel. v. Dreyer, 183 Mo. App. 482; State ex rel. v. Adcock, 206 Mo. 556; Ross v. City of

New York, 82 N. Y. Supp. 920; Paulin & Orendorff v. City, 127 Fed. 55; Elizabeth v. Fitzgerald, 114 Fed. 547; Lamson v. City, 95 N. W. 78. (6) Mandamus is a civil proceeding in the nature of an action at law and the findings of the trial court as to the facts when supported by any substantial evidence cannot be disturbed on appeal. State ex rel. v. Dreyer, 183 Mo. App. 463; State ex rel. v. Bourne, 151 Mo. App. 104; State ex rel. v. Insurance Co., 169 Mo. App. 354.

WHITE, C.—This is a proceeding to compel by mandamus the issuance of tax bills to pay for the construction of pavement on a street in St. Joseph, a city of the first class. The relator is assignee of the Standard Construction Company, the contractor in the performance of the work. The Circuit Court of Buchanan County, after hearing the evidence, determined the issues in favor of relator, and granted a peremptor writ and defendants appealed.

The petition for the alternative writ set out the ordinance providing for the concrete paving of Twelfth Street from Hickory Street to Garfield Avenue, and constructing concrete sidewalks therealong; the execution of the contract by the Board of Public Works of St. Joseph, with the Standard Construction Company, a partnership; the full performance of the work under the contract, according to specifications; the assignment of the prospective tax bills and rights under the contract to relator; a demand upon the City Engineer and Board of Public Works to accept the work and issue the tax bills, and their refusal; and alleges: "That said board and engineer, without just cause or reason, arbitrarily and by reason of ignorance and misapprehension of facts, and in an effort to construe the legal effect of said contract and moved by caprice and prejudice, have refused and failed to perform said duty and still refuse to perform the same, though repeated demands have been made for such performance." The petitioner further alleged that he was remediless by ordinary proceeding at law and prayed for the writ of

mandamus commanding the board and engineer to issue the tax bills.

An alternative writ was issued in accordance with the prayer of the petition, and the defendants filed their answer and return to the same, admitting that they were officers of the city, as alleged, the passage of the ordinance, and the execution of the contract with the Standard Construction Company. The return alleged that the Board of Public Works, by virtue of the charter of the City of St. Joseph, was vested with discretionary powers and duties in relation to the execution and performance of contracts for public improvements and in the acceptance of and payment for work under such contracts; that pursuant to the provisions of Section 8840, Revised Statutes 1909, the contract under consideration contained the following stipulation:

"And the said party of the first part further agrees that he will not be entitled to receive payment for any portion of the aforesaid work or materials until the same shall have been fully completed in the manner set forth in this agreement to the satisfaction and acceptance of the Board of Public Works."

The return then alleged that the Standard Construction Company did not make the improvement provided for in the ordinance in accordance with the contract, plans and specifications, nor within the time specified for doing the work; that the improvements contemplated were not completed to the satisfaction and acceptance of the Board of Public Works, and the Board of Public Works had not accepted or approved said work; that it had refused to provide for the issuance of tax bills, "and that said refusal and said exercise of discretion were not capricious nor arbitrary; nor without just cause or reason; nor by reason of ignorance or misapprehension of facts, or the result of prejudice, oppression or fraud, or aught else, except the result of the honest judgment of said Board of Public Works, and the honest exercise of the discretion provided and enjoined by the charter of the City of St. Joseph. . . . That the refusal . . . was made

upon full information of the refusal, failure and neglect of the contractors to perform said work.''

No reply to this return is set out in the record and no note appears in the record of a reply having been filed, although the judgment recites that, on the hearing of the case, the return ''and the traverse of said relator to said return'' were submitted to the court for trial, together with the evidence. On the trial the contract was introduced, but the portions appearing in the record do not contain the paragraph set out in the return and above quoted. The only portions of the contract copied in the record which are important for our purpose provide for the character of paving to be laid, that paving material shall consist of a base and wearing surface, the base to be of concrete of a uniform thickness of four inches, and the wearing surface to be of uniform thickness of two inches, overlaying the base; the manner of laying the base to be by the setting up of guide stakes.

The contract was let September 22, 1914, and the pavement laid, so far as the contractor was concerned, by November 22, 1914, and within the time provided for the completion of the contract. The issuance of tax bills was delayed on the ground that the city engineer had not had time to measure up the street. In January, 1915, Mr. Campbell, the engineer, died and Carl Hoff, assistant, succeeded him as City Engineer. Mr. Hoff delayed the tax bills and there were some minor defects, including some cracks which must be repaired before issuance of the tax bills. Hoff then, on January 14, 1915, made a written statement to the Standard Construction Company specifying the defects which must be repaired, consisting of broken places in the curbing, broken parts of the street, some cracks, and other minor imperfections. These required repairs were made in March, 1915, as soon as the weather permitted the work to be done. About that time a rather peculiar crack at one point was reported to the engineer. The pavement at that point was torn out and was found to be deficient in thickness. The engineer

then caused test holes to be made, eighty-four in number, showing the thickness of the pavement and extending along the entire length of the street. A blueprint was prepared showing the result of these tests and the average thickness of the pavement throughout the street. This blueprint was introduced in evidence, but does not appear in the record. After the tests were made the contractor abandoned the work, and the bonding company, which furnished the bond for the contractor, undertook to meet the requirements of the city engineer, who made a written statement of what was necessary in the following words:

St. Joseph, Mo., October 11, 1915.

MEMORANDUM

IN THE MATTER OF REPAIRS TO SOUTH TWELFTH STREET BETWEEN HICKORY STREET AND GARFIELD AVENUE.

The work contemplated is removing certain section of the recent pavement and renewing the same in accordance with the specifications of the original contract therefor.

The extent of this work is approximately as follows:

13-50ft. sections of pavement 30 ft. wide and such other repairs as the city engineer may direct. Further information may be secured from the city engineer.

C. P. H.,

CPH/JJ                                                  City Engineer.

It will be noticed that this was in October, almost a year after the contract should have been completed. Considerable testimony was offered regarding the understanding between the bonding company and the city engineer, not only as to the amount of work to be done, but as to the effect such work might have upon the issuance of tax bills. It appears that the thirteen sections, fifty feet each in length, which, according to the memorandum, were to be torn up and replaced, were not contiguous, but were at different places along the street. It may be noted here that while the original work was in progress the city engineer, at all times, had an inspector overseeing the work to see that it was up to specifications as it progressed. In conversations of Mr. Stringfellow, agent of the bonding com-

pany, with the engineer and the Board of Public Works, it seemed to develop that at least one of the inspectors was not careful and did not require the work to come up to specifications. It was claimed by appellants that an understanding was reached to the effect that the bonding company would complete the work as required by the engineer, the engineer would report to the board that the work contemplated was completed and the contract substantially complied with within the time required. It appears to be admitted by the city officers that the failure to complete the work within the time required by the contractor was waived, provided the repairs should be made by the bonding company according to the requirements of the city engineer. The bonding company accordingly went to work, took up and relaid about six hundred and twenty feet of the pavement. The sections were fifty feet each in length. The relaid portion, therefore, was thirteen sections, less about thirty feet. It is not disputed that the work done by the bonding company, so far as it went, was in accordance with the specifications. The dispute as to the facts turned in the main upon two propositions: whether that part of the pavement which was not taken up and replaced was in substantial compliance with the contract; and, whether the work which the bonding company undertook to do met the requirements of the city engineer as stated in the memorandum set out above.

The evidence for the plantiff was about as follows:

John J. Werst testified that he was inspector of part of the work. He described the method of laying the pavement by setting six-inch stakes on the subgrade and the filling in of the concrete base to four inches and the wearing surface the remaining two inches. It seems that the wearing surface of two inches was also measured by moving a two inch strip along as the concrete was laid. He testified that the part of the work which he inspected was in accordance with the contract; he was present as inspector during the lay-

35—280 Mo.

ing of about three hundred and fifty feet. Werst assisted in making the test holes. He said some places were short in topping and the pavement was four inches or four and a fourth inches in thickness. His tests were made under the direction of the city engineer.

John Rohloff was inspector of a great part of the work as it was laid. He testified that he was present during the laying of the work which he was there to oversee, he measured the six-inch stakes to see that they were of the required height, and said the pavement was laid of the required thickness while he was overseeing it.

J. C. Skillbred, who was overseeing the work for the bonding company, said that the work which he did was according to the specifications and that he couldn't see any difference between it and the remaining part of the street. When asked to account for the thinness of the wearing surface in a certain part of the street he explained that, when laid wet, cement is inclined to "creep" towards the gutter, on account of the slope from the centre of the street. That fact was sworn to by some witnesses for the city, although they testified also that there was not enough concrete on the street to make the wearing surface, because it was not over the required thickness even at the gutter after it had "crept." Skillbred said that on some portions of the street which he inspected there was no topping; that appears to be the portions where he relaid it.

Mr. Stringfellow, agent of the bonding company, testified that in reconstructing portions of the street he had complied with the engineer's requirements as stated in his memorandum.

Mr. Dolman, the assignee of the contractor, stated that the original contractor was paid eleven thousand and two hundred dollars by him; that the express of the repairs made by the bonding company was about four thousand dollars. Mr. Stringfellow put the cost of the repair work at about three thousand dollars. Dolman gave it as his opinion that the refusal to issue the tax bills was on account of politics. The spring cam-

paign was coming, which circumstance, he thought, determined the action of the city authorities, who refused to issue the tax bills without reasonable excuse.

The defendants then introduced W. D. Morrison, John Brindel, Charles E. Dickey and John B. Dewey, present and former members of the Board of Public Works. They all swore that they had refused to sign the tax bills because the work was not substantially up to specifications; that they went to the street with Mr. Stringfellow and measured it; that the pavement ran as thin as four and a half inches, although it was six inches in places; that they would have issued the tax bills had the engineer reported that the work was substantially up to specifications.

In regard to the reconstruction or repair work done by the bonding company, they all declared the requirements of the city engineer in that respect were never complied with. The pavement not replaced was from an inch to two and a half inches thinner in places than it should have been. They measured the blocks which were torn out in the repair work and found many of them only four or four and a half inches thick, and in some places the topping was almost entirely missing. Where the replacement stopped the original was as defective as that which was taken up. They all stated there was no substantial compliance; that if in their judgment the job had been within eighty-five or ninety per cent of specifications they would have issued the tax bills, but it was much less than that. Mr. Dewey said he walked the full length of the street and in places there was almost an entire absence of topping; he took measurements of that part which was not torn up and replaced.

Mr. Harry Miller said that he was an inspector for the city; he took measurements and made a record of the thickness of the pavement of the part that was torn up. He said the topping was more toward the gutter and very little left on the crown in that part of the street which was not torn up.

The City Engineer, Carl P. Hoff, stated that when the pavement was first laid he found serious deficiencies,

made the tests as mentioned in the evidence of the other witnesses, and on conference with the bonding company prepared the memorandum above set out. He said there was no difference between the thickness of the pavement where the replacement was discontinued and that which was taken out. The attention of the bonding company was called to the fact that the work should not stop where they stopped it; there were places further on where the topping was deficient. He pronounced the street a poor street, and said it did not compare with other concrete streets in the city. The items mentioned in his memorandum were only an approximation of what was required; it was impossible to tell at that time exactly what would be necessary to put the street in a condition of substantial compliance with the contract, and for that reason he reserved in the statement the right to direct other repairs not specified.

I. The rule is general that a litigant asking relief by mandamus must prove that he has a clear, unequivocal, specific right to have performed the thing demanded. [State ex rel. v. Stone, 269 Mo. 1. c. 342.] The remedy will not lie if the right is doubtful. [State ex inf. v. Kansas City Gas Co., 254 Mo. 1. c. 532.] A ministerial duty which may be enforced by mandamus is one in respect to which nothing is left to discretion. [State ex rel. v. Hudson, 226 Mo. 239, 1. c. 265.] For instance, it will not lie to compel a county court to select, as a depository for the county funds, a bank which bids the highest rate of interest, although the statute provides that the depository shall be one which offers to pay the largest rate of interest, there being another provision that the county court shall have the right to reject any and all bids. [Reagan v. County Court, 226 Mo. 79, 1. c. 88.] Where a ministerial body is entrusted with the exercise of a function which requires the ascertainment of certain facts before performing a specific duty, mandamus will not lie to compel the performance. This is particularly applied to county courts and municipal au-

*Mandamus.*

thorities in the issuance of dramshop licenses, where they have to ascertain whether the petition for the license contains the names of the necessary number of persons qualified to sign, or whether the applicant is of the character which entitles him to a license. [Weber v. Lane, 99 Mo. App. 69, l. c. 81; State ex rel. v. Thornhill, 174 Mo. App. 474-5.] It will not lie to compel a county court to issue a warrant for a debt against the county before that court had passed upon it and allowed it. [State ex rel. Hutton v. Scott County Court, 197 S. W. 347-8; State ex rel. Forgrave v. Hill, 198 S. W. 844, l. c. 846.]

It was held that mandamus would not lie directing the Board of Public Works of the City of St. Joseph to let a contract to the lowest bidder where the charter provided that such contract should be let to the lowest bidder, but that the board had power to reject any and all bids. There was an element of discretion which prevented the exercise of the writ of mandamus to compel action. [State ex rel. v. Meier, 142 Mo. App. 309, l. c. 310.]

II. Section 8841, Revised Statutes 1909, relating to cities of the first class, requires the board of public works to provide for the issuance of tax bills against "property properly chargeable therewith." How was it to be determined what property was properly chargeable with tax bills? Section 8840, Revised
**Substantial Compliance.** Statutes 1909, relating to contracts with cities of the first class provides that "in letting contracts the board [of public works] shall reserve the right to decide all questions as to the proper performance of the work and the meaning of contracts, and in case of improper construction, may suspend the work and relet the same, or order the entire reconstruction of such work, . . . as may be deemed best by the board."

The allegation of the return quoting a provision of the contract which said the contractor should not be entitled to receive payment for the work until it was

completed to the satisfaction and acceptance of the Board of Public Works, does not appear to be denied anywhere. The case is presented as if the stipulation were in the contract.

Thus the statute and the contract invested the Board of Public Works with very full and ample authority, not only to determine the character of improvements to be made, but to determine when and to what extent a contract for such improvements has been complied with. Necessarily it must make such determination by an ascertainment of the facts. A stipulation of the kind set out is binding and conclusive upon the parties, in the absence of fraud, mistake, oversight or misconception of the facts. [McCormick v. City of St. Louis, 166 Mo. 315, l. c. 329; McGregor v. Construction Co., 188 Mo. 611, l. c. 623; Scott v. Realty Co., 241 Mo. 112, l. c. 127; Williams v. Santa Fe Railway Co., 153 Mo. 487, l. c. 499; Cann v. Rector, Wardens, etc., 111 Mo. App. 164, l. c. 191; Whiteley v. McLaughlin, 183 Mo. 160, l. c. 163.] If it were conceded, or proven beyond dispute, that certain specific work was accomplished amounting to a substantial compliance with the contract, or that such was the only proper inference to be drawn from the facts proven, then the board would have no discretion and could be compelled by mandamus to issue the tax bills. But the facts were in dispute.

The report of the city engineer showing the result of his tests was introduced in evidence without objection, and the respondent complains of the absence of this particular bit of evidence and asks this court to infer that it would show a condition favorable to the claims of the relators. Whatever may be said of its force as tending to establish the facts contended for by the respondent it certainly was not conclusive of those facts. It was competent to prove by witnesses who knew the facts, just the condition of the streets. The engineer himself swore to the imperfect compliance with the contract from his examination of the entire street. Other witnesses, including four present and

former members of the Board of Public Works, added their testimony to the same effect. They all testified with circumstantiality and from personal inspection. There was a quantity of substantial evidence showing that the topping was almost entirely absent, or had slipped towards the gutter until it had achieved a vanishing point at the crown of the street, where the macadam in the concrete base was exposed to view; that there were numerous cracks in the pavement, many more than ordinarily appear in a well constructed concrete pavement.

It was not the duty of the circuit court to weigh such evidence. It was the function of the Board of Public Works to examine it and determine whether in fact the contract was substantially complied with. It was aptly said in the case of State ex rel. v. Thornhill, by Judge TRIMBLE of the Kansas City Court of Appeals, 174 Mo. App. l. c. 475:

"If the circuit court in a mandamus case can hear the evidence and decide the questions involved in the granting of a saloon license and order the county court to issue the license, then it is the circuit court, and not the county court, that is granting it."

So here, if the circuit court should hear the evidence and decide whether the pavement of the street came up to a substantial compliance with the contract, then it assumes the exercise of the function which the law imposes upon the Board of Public Works.

The evidence was properly heard and must be considered here, for the purpose only of determining whether the city officials acted arbitrarily in defiance of proven facts. That was an issue tendered and accepted in the pleadings.

A line of cases is cited by respondent, showing that mandamus has been allowed by a superior court directing an inferior court to assume jurisdiction and to try a case where the inferior court had determined as a preliminary matter that it had no jurisdiction and refused to proceed further. [State ex rel. v. Homer, 249 Mo. 58; State ex rel. Fleming v. Shackelford, 263 Mo.

l. c. 60; State ex rel. Bayha v. Philips, 97 Mo. 331; State ex rel. Sanders v. Wear, 37 Mo. App. 325.] We cannot find in any of them that the determination of jurisdiction turned upon the *ascertainment of facts* by the inferior court; the facts were undisputed and it was a question of law as to whether it had jurisdiction. The superior court settled the question of law and compelled the exercise of jurisdiction by mandamus. [State ex rel. v. Homer, supra, l. c. 67.] Such cases are not exceptions to the general rule stated above.

III.  The alternative writ and the petition allege that the action of the board in refusing to issue tax bills was arbitrary and without just cause, an allegation specifically denied in the return. That allegation is in reliance upon an exception to the general rule stated above, an exception which allows the remedy by mandamus where the discretion of administrative officers is abused, where they act in a capricious and arbitrary manner. The discretion of such officers must be exercised impartially and in good faith. [State ex rel. v. Dreyer, 183 Mo. App. l. c. 469-70; State ex rel. Hathaway v. State Board of Health, 103 Mo. 22, l. c. 29; State ex rel. v. Public Schools, 134 Mo. 296, l. c. 311.] In State ex rel. McCleary v. Adcock et al., 206 Mo. 550, l. c. 556, this court held the writ would lie, "If the board of health, against all the rules of evidence and against the great weight of the evidence, as evinced by this record, arbitrarily refused to grant the license."

If the Board of Public Works exercised its discretion capriciously and without reason, then the court should interfere by mandamus to compel proper action in the premises; but there is nothing in the record to indicate an arbitrary or capricious action. True, one or two witnesses testified that in their opinion the board was influenced by political considerations, but no fact was sworn to which indicated improper influence. On the contrary, it was stated by witnesses for respondents that the members of the board and the engineer

*Arbitrary Action.*

were honest and not improperly influenced, but were performing their duty according to their best judgment of what was required of them.

It is argued by respondent that a finding of facts by a court in a mandamus proceeding is binding upon this court as is such finding in any other kind of a case. That is true enough where the facts are such as the circuit court has authority to find. It cannot be inferred from the rule that the trial court is authorized to take evidence and find the facts which must be determined on an investigation by the body whose act is sought to be compelled. The cases cited are where the finding of the trial court turned upon the facts showing that the body, against whom the writ was directed, acted capriciously and in gross absence of discretionary powers. In this case there was no specific finding that the board acted capriciously or arbitrarily and no evidence to that effect. [State ex rel. v. Dreyer, 183 Mo. App. 463, l. c. 481; State ex rel. v. Bourne, 151 Mo. App. 104, l. c. 125.] The trial court especially found from the evidence that there was a substantial compliance, and granted the writ on that theory, not on the theory that the board acted arbitrarily.

It is possible, as asserted, that the assignee of the contractor in this case and the bonding company will suffer a hardship by a denial of the relief sought. That is unfortunate and it is possibly unfortunate that the legislature has made no provision for a *quantum meruit* recovery in a case of this kind except in a suit to enforce the lien of tax bills. But where the law is so clear and the function of the court in such case is so well defined, where the limited and cautious exercise of this extraordinary remedy is so repeatedly ruled as a fixed principle in our jurisprudence, no considerations of the kind mentioned should influence the court in extending the operation of the writ to the dangerous and experimental stage demanded in this proceeding.

The judgment is reversed.

*Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.

### ON MOTION FOR REHEARING.

PER CURIAM:—On consideration of the motion for rehearing filed herein, it is decided that the cause should be remanded in order that the trial court may ascertain whether the construction of curbing and sidewalk is in accordance with the contract, and can be separated from the paving in ascertaining the price to be paid for the same and assessed against the property liable for such payment.

It is therefore ordered that the opinion be modified accordingly and the judgment be reversed and the cause remanded, and the motion for rehearing is overruled.