THE STATE *ex rel.* CAMPBELL *et al., Appellants,* v. CRAMER, *Mayor, et al.*

1. **Ferry License** : MUNICIPAL CORPORATION, DISCRETION OF. In a *mandamus* proceeding to compel a mayor and city council to grant a ferry license, the return stated that under the legislative power delegated to the city "to regulate, tax and license all ferries within the limits of the city," defendants had granted an exclusive license to another ; that the public necessities did not require the establishment of another ferry within the city limits ; and that the defendants, in the exercise of their legislative and discretionary powers, had refused to grant relators a ferry license. *Held,* on a demurrer to the return, that the discretion of the defendants could not be controlled by *mandamus.*

96 75
108 561
96 75
110 562
96 75
116 194
96 75
136 510
96 75
84a 534
96 75
f94a 682

2. **Mandamus** : INFERIOR TRIBUNAL. Where an inferior tribunal has a discretion and acts, *mandamus* will not lie to control it. But if it refuses to act, it can be compelled by *mandamus* to do so, and in proper cases, the court will settle the legal principles applicable to the case, but without controlling the discretion of the inferior tribunal.

*Appeal from Cape Girardeau Circuit Court.*—HON. J. D. FOSTER, Judge.

AFFIRMED.

*R. B. Oliver* for appellants.

(1) The respondents, as city officers, had the exclusive power to grant appellants a license to operate a ferry. Laws 1872, p. 334, sec. 39. (2) Where the power of granting a license is conferred upon particular officers, and they refuse to grant the same, the writ of *mandamus* will go. High's Extra. Leg. Rem. [2 Ed.] *70, 71 ; *People v. Perry*, 13 Barb. 206. (3) While it is true, as a rule, that courts will not interfere by *mandamus* to compel the granting of a license where the officers are vested with a discretion ; but where a license has been refused under a mistaken construction of the law governing the case, or where they are mistaken as to the law, and refuse a license therefor, the writ has been allowed and ought to go. *Thomas v. Armstrong*, 7 Cal. 286 ; *Zanone v. City*, 103 Ill. 552. (4) Here the respondents plead as the cause of their refusal to grant the license, that Carroll had entered into a contract with them for the exclusive privilege of ferrying. The city has the exclusive power to license, but not the power to grant an exclusive license, and the courts will not permit such important public trust to be frittered away or parcelled out to favored individuals. *Milhan v. Sharp*, 17 Barb. 435 ; s. c. 28 Barb. 228 ; *Davis v. Mayor*, 14 N. Y. 506 ; *State v. Mayor*, 3 Duer, 119 ; *State v. Groves*, 19 Md. 351 ; *Coats v. Mayor*, 7 Cow. 606 ; Cooley's Const. Lim. [4 Ed.] 251 ; *Ferry Co. v. Davis*, 30

Am. Rep. 390 ; *Harrison v. State,* 9 Mo. 515.   (5)  · The ordinance pleaded by respondents violates section fifteen, article eleven, constitution of Missouri, in that it attempts to grant an irrevocable special privilege to Carroll.   Const. of Mo. art. 2, sec. 15 ; *St. Charles v. Nalle,* 51 Mo. 122.   (6)  The power claimed by the city is *ultra vires*—is a monopoly, and violates the spirit and letter of our constitution, and is therefore null and void.   Const. of Mo. art. 12, sec. 1 ; *Gas Co. v. Gas Co.,* 16 Mo. App. 52 ; *Rendering Co. v. Behr,* 77 Mo. 91 ; *St. Charles v. Nalle,* 51 Mo. 122.

*Wilson Cramer* and  *S. M. Green* for respondents.

(1)  The granting of licenses and regulating ferries is purely a matter of state and not of federal legislation. 3 Wait's Actions & Def. 353 ; *St. Louis v. Ferry Co.,* 14 Mo. App. 216, 219 ; *Carroll v. Campbell,* 25 Mo. App. 630.   (2) The legislature may delegate its authority over the subject to a municipal corporation and confer upon it an exclusive right to license and regulate ferries.   3 Wait's Act. & Def. 346 ; *Harrison v. State,* 9 Mo. 530 ; *State v. Sherman,* 50 Mo. 265 ; *State v. Harper,* 58 Mo. 530 ; *Ferry Co. v. Davis,* 30 Am. Rep. 390.   (3)  The amendatory act of incorporation, approved March 29, 1872, by conferring on the city of Cape Girardeau " the exclusive power and right to regulate, tax and license all ferries within the limits of the city," suspends within the jurisdictional limits of the city the operation of the general statutes relative to ferries, which have remained practically unchanged since the revision of 1865.   G. S. 1865, p. 302 ; Sess. Acts 1872, p. 334, sec. 39.   (4)  The right to keep a ferry is not absolute, but is a privilege granted by the state or municipality, subject to certain regulations.   No one is entitled to a license as a matter of right.  Under the statute the county court, before issuing a license, must believe " such ferry necessary

for the accommodation of the public, and that the petitioner is a suitable person to keep the same." The city, exercising the delegated power, is of course, to be governed by the same considerations. R. S. sec. 5673; *Stark v. Miller*, 3 Mo. 470 ; *Ragan v. McCoy*, '29 Mo. 356. Respondents set forth in their return " that the public necessity does not require the establishment of another ferry within the jurisdictional limits of the city." (5) "A right to license implies the right to prohibit," and the granting or refusing of licenses rests in the sound discretion of the city authorities to be determined by the requirements of the public good. *Ferry Co. v. Davis*, 30 Am. Rep. 390. (6) Waiving the question whether the city of Cape Girardeau could or could not legally grant an exclusive ferry privilege, as it did to Carroll, or whether, in view of its arrangement with him, it was precluded from issuing a license to another —the action of the mayor and council in refusing to license respondents, being discretionary, is final and not subject to review on proceeding for *mandamus*. 2 Dill. Mun. Corp. [2 Ed.] sec. 669 ; High's Extr. Legal Rem. secs. 325, 326, 327, 328. (7) Even in the exercise of judicial functions involving discretion, *mandamus* will not lie. *State v. Gregory*, 83 Mo. 123 ; *State v. Hudson*, 13 Mo. App. 61 ; *Strahan v. County Court*, 65 Mo. 644. Under our system of government there is no power to compel the legislature to make laws. *Schools v. Pullen*, 62 Mo. 448. A city council is a miniature general assembly. *State v. Foster*, 52 Mo. 513. The judicial writ of *mandamus* will go no further than to set the machinery of the court in motion, but will not direct the performance of any particular judicial act. *State ex rel. v. Court*, 87 Mo. 376. It follows, then, that the judicial writ of *mandamus* would be ineffectual to compel any act of a coördinate branch of government whose distributive share of power is legislative. Const. of Mo., art. 3.

NORTON, C. J.—Relators Campbell and Houck, having been refused a ferry license by the mayor and city council of the city of Cape Girardeau, have instituted this proceeding by *mandamus* to compel them to grant them license.

Defendants, in their return to the alternative writ, set up among other things the following: " That the city of Cape Girardeau was a municipal corporation ; that by the charter the mayor and council were authorized to legislate upon all matters within the city set out in the charter ; that among the subjects of legislation by the mayor and council of the city of Cape Girardeau, the respondents herein, and upon which they may legislate by ordinance, are the following subjects, more fully set out in article three of said charter, entitled 'legislative power' : The improvement of the navigation of the Mississippi river within the corporate limits of the city ; to erect, repair and regulate docks and wharves, and to fix the rate of wharfage thereat ; to regulate the stationing, mooring and anchoring of vessels within the city limits ; and to create the office of port warden, and define the duties thereof ; and to have the exclusive power and right to regulate, tax and license all ferries within the limits of the city ; that the exercise of the corporate powers and duties vested in the mayor and board of council by the charter of the city in that behalf is wholly and solely legislative ; and all ordinances passed by the mayor and council of said city, when thereunto lawfully assembled, concerning said subjects and matters aforesaid, are within the legislative discretion of said mayor and council and not otherwise.

" And defendants making further return say that on the —— day of ——, 1885, one Richard Carroll, a citizen of the city and county of Cape Girardeau, and state of Missouri, appeared in person and by counsel, before the mayor and council of said city of Cape Girardeau, duly assembled as a legislative body, and

for the transaction of business, and presented a petition to said mayor and council asking for a ferry license within the jurisdictional limits of the city, across the Mississippi river, between the city of Cape Girardeau in the state of Missouri, and East Cape Girardeau in the state of Illinois. And in his said petition proposed to put in a new steam ferry-boat of the following dimensions, that is to say, ninety-eight (98) feet long, twenty-six and one-half (26½) feet beam, thirty-four (34) feet out to out, and a capacity of twelve wagons; whereupon, in due course of legislation, the mayor and council of said city, being assembled according to law, passed an ordinance granting to said Richard Carroll an exclusive license; said ordinance being entitled, 'An ordinance granting a ferry franchise to Richard Carroll,' being ordinance numbered four hundred and eleven, in words and figures as follows:

"'Whereas, Richard Carroll, of the city of Cape Girardeau, in the state of Missouri, has proposed that if the city of Cape Girardeau, in said state, will grant him a ferry license across the Mississippi river from Cape Girardeau to the opposite shore in Illinois for the term of ten years, he will put in a new steam ferry-boat to run between the aforesaid city of Cape Girardeau, in the state of Missouri, and East Cape Girardeau, in Illinois, of the following dimensions: Ninety-eight (98) feet long, twenty-six and one-half (26½) feet out to out, and of a capacity of twelve (12) wagons; and has further agreed to pay said city the sum of fifty dollars every six months for a license therefor, and to enter into a good and sufficient bond in the sum of one thousand dollars to said city, conditioned for the faithful performance of the agreements herein, and the requirements of existing ordinances respecting the duties and obligations of ferrymen, equipment of ferry-boats and other matters touching ferriage; therefore,

" ' Be it ordained by the mayor and council of the city of Cape Girardeau as follows :

" ' Sec, 1. That except as hereinafter set out and specially reserved and excepted, an exclusive ferry franchise for the sole purpose of keeping, running and maintaining a steam ferry over and across the Mississippi river, within the jurisdictional limits of the city of Cape Girardeau and a strip of land on the Illinois shore, opposite said city and not extending beyond the line of the limits of the city aforesaid, along the bank of the Mississippi river, be, and the same is hereby granted to Richard Carroll, of the city of Cape Girardeau and state of Missouri, for the term of ten years from the fourteenth day of September, 1885, said grant being in all things subject to the requirements of this and existing ordinances.

" ' Sec. 2. Said ferry-boat shall be new and of the following dimensions : Ninety-eight (98) feet long, twenty-six and one-half (26½) feet beam, thirty-four (34) feet out to out, of a capacity of twelve (12) wagons, and to be propelled by adequate steam power. And if at any time the business shall increase so as to require an additional boat or boats, that said Carroll shall furnish such boat or boats as may be necessary to do the business ; and in case he shall fail so to do, after having been duly notified, the mayor shall have power to revoke the license of said Carroll.

" ' Sec. 3. That said Richard Carroll shall pay to the city of Cape Girardeau the sum of fifty dollars for each period of six months during the existence of said term of ten years, and a license shall be issued in due form signed by the mayor and countersigned by the city register, for each six months as aforesaid, but no such license shall issue until the bond required by ordinance numbered three hundred and sixty-nine, being an ordinance entitled " an ordinance regulating ferries,"

approved April 29, 1882, shall have been approved by the mayor. And the acceptance of the first license herein by said Carroll shall be deemed an acceptance, and an agreement thereto, of all in this ordinance set out and required.

"'Sec. 4. The franchise herein granted and authorized shall not be transferable without the consent of the mayor and council thereto.'"

The return, after setting up that said Carroll had complied with the ordinance, paid his license, and invested his means in putting in such a ferry-boat as was required, and was operating it under his license, then sets up as follows: "And respondents further state that long after the said ferry franchise had been granted to the said Carroll, and he had procured his boat and fully complied with all the requirements of the several ordinances in that behalf, James T. Campbell & Co., of which firm this relator James T. Campbell was a member, made application to the said mayor and council for a license to run and operate a ferry within the jurisdictional limits of said city aforesaid, but that the said mayor and council acted upon said application, and in the exercise of their discretion refused to grant such license to said Campbell & Co. ; that the public necessity does not require the establishing of another ferry within the jurisdictional limits of the city, and to grant the prayer of the relators, that is to say, to grant them a license on the same terms, or on any terms whatever, would be in violation of the contract entered into with said Carroll and in fraud of said franchise so granted to him."

A demurrer was filed to this return, which being overruled and judgment being entered, plaintiff has appealed, and insists that the ordinance set up by respondents in their return is unconstitutional and void, in this, that it grants to Carroll an exclusive ferry franchise for ten years. Waiving the determination of this

proposition the question remains, conceding, for the purposes of this case without so deciding, that the exclusive power and right given by the charter to the mayor and council to regulate, tax and license ferries does not confer the power to grant an exclusive ferry privilege or franchise, do the other facts stated in the return and admitted by the demurrer to be true preclude plaintiffs from the remedy they seek? If the ordinance, in so far as it grants an exclusive franchise for ten years, is invalid, this would not necessarily make it invalid, as to that portion of it which authorizes a license to be issued every six months to Carroll upon his paying the license tax as provided therein.

The demurrer admits the payment of this license tax by Carroll, and that he was operating a ferry under the license granted him by the city; it also admits that the public necessity did not require the establishment of another ferry within the jurisdictional limits of the city; it also admits that some time after the ferry was being operated by Carroll the mayor and council, in the exercise of their legislative and discretionary powers, acted upon the application of plaintiffs for a ferry license, and in their discretion refused to grant it.

Upon these admitted facts, the question arises whether the legislative discretion of the mayor and council can be controlled by *mandamus?* This question is answered in the negative by the following authorities: In 2 Dillon on Municipal Corporations [3 Ed.] section 832, it is said that "powers conferred upon municipal corporations are mandatory or discretionary. Discretionary powers are not, unless in extraordinary and exceptional cases to restrain gross abuse, subject to judicial control, but duties imperatively enjoined may be enforced by *mandamus.*" The general rule of law is this, if the inferior tribunal, corporate body, public agent or officer has a discretion, and acts and exercises it, this discretion cannot be controlled by *mandamus.*

But if the inferior tribunal, body, officer, or agent refuse to act in cases where the law requires them to act and the party has no other legal remedy and where in justice there ought to be one, a *mandamus* will lie to set them in motion and to compel action ; and in proper cases the court will settle the legal principles which should govern, but without controlling the discretion of the subordinate jurisdiction, body or officer.

So in section 325, High on Extraordinary Legal Remedies [2 Ed.] it is said : "Courts are inclined to a somewhat liberal exercise of their jurisdiction by *mandamus*, for the purpose of coercing the performance of duties obligatory upon municipal corporations and their officers ; they yet refuse to trespass upon the limits of official discretion, and the principle applies with peculiar force to this class of cases, that *mandamus* will not lie to control the decision of officers, entrusted with the power of determining any particular matter. Where, therefore, municipal authorities are by law entrusted with jurisdiction over certain matters, the decision of which rests in their sound discretion, and requires the exercise of their judgment, *mandamus* will not lie to control or in any manner interfere with their decision since the courts will not direct in what manner the discretion of inferior tribunals and officers shall be exercised." And in section 327, it is said : "The granting of licenses, being usually a matter of sound discretion, falls under the operation of the rule above laid down. * * * So when a board of municipal officers are empowered to grant licenses upon due application to operate ferries, and have acted upon such applications granting one and refusing another, the writ will not go to require them to grant a license to the unsuccessful applicant. Otherwise, however, if the license be refused under a mistaken construction of the law governing the case, and when a board of county supervisors, acting under a mistake as to the law, have refused a ferry

license, to which the applicant was clearly entitled, the writ has been allowed."

In this case one of the grounds set up by the respondents in their return for refusing the license is, that the public necessities did not require the establishment of another ferry within the jurisdictional limits of the city, and the demurrer admits this to be true.

The judgment is for the right party and it is hereby affirmed. All concur, except RAY, J., absent.