THE STATE EX REL. FRED GEHNER v. L. D. THOMPSON, State Auditor.
—293 S. W. 391.

Division One, April 11, 1927.

**1. STATE AUDITOR: Demands against State: Discretion: Mandamus.** The statutes defining and prescribing the duties of the State Auditor require of him the exercise of an especial discretion in the auditing, settling

316 Mo.—74.

and allowing of demands against the State payable out of the State Treasury, and give to a claimant, whose claim he has rejected, the right, upon request, to appeal to the General Assembly from his decision; and where he has rejected such claim, though erroneously, if he did not act arbitrarily or without legal right, but did act in apparent good faith and in compliance with the statutory prescriptions, mandamus is not available to compel him to allow and authorize the payment of the rejected demand. The statutes invest the State Auditor, in the allowance or disallowance of claims against the State, with quasi-judicial functions and duties, and that quasi-judicial discretion the courts cannot, in a direct proceeding, such as mandamus, control and direct, unless it be clearly shown that he is acting arbitrarily and without legal reason, or unless it clearly appears that he has abused his discretion.

**2. State Auditor: Allowance of Demands against State: Compensation for Services: Income Tax Returns: Later Demand: Mandamus.** The State Auditor, having apparently in good faith and within the discretionary powers and duties imposed upon him by law, examined, audited and allowed a demand against the State, made by a claimant upon documentary evidence presented to him which in all respects complies with the statutory prescrip- not owe to another claimant the imperative duty to audit, settle and allow, and to permit the State to pay, another and subsequent claim for compensation for the same services or part thereof.

**3.  ———: Income Tax Report: Compensation for Services of Assessor: Allowance and Payment: Demands of Successor.** The State Auditor, having apparently in good faith and within the discretionary powers and duties imposed on him by law, examined, audited and allowed the demand of an assessor for the statutory fees for making the state income tax book for the year and within the time prescribed by law, made upon documentary evidence which in all respect complies with statutory prescriptions, does not owe to the successor of such assessor the imperative duty to audit, settle and allow, and to permit the State to pay, another and subsequent claim as compensation for services claimed to have been rendered after he went into office in making further returns of assessment of income taxes for the same year, made after the time such returns are by law required to be made; and especially so, where the claimant, in his mandamus suit, neither alleges nor proves what evidence he offered in support of his claim at the time he exhibited it to the Auditor.

**4. MANDAMUS: Doubtful Right.** The rule is general that the petitioner for relief by mandamus must prove that he has a clear, unequivocal, specific and positive right to the thing or action demanded, and mandamus will not lie if the right is doubtful.

**5.  ———: Ministerial Duty: Discretion.** The officer's ministerial duty can be enforced by mandamus only when it is shown that the duty is one in respect to which nothing is left to his discretion.

**6.  ———: Proof of Claim: Arbitrary Action.** In a suit by mandamus to compel the State Auditor to audit and authorize the payment of a claim against the State, it cannot be held that the Auditor acted arbitrarily in rejecting the claim, where there is nothing in the record showing what evidence the claimant offered in support of his claim at the time it was exhibited to the Auditor.

Corpus Juris-Cyc. References: **Mandamus,** 38 C. J., Section 16, p. 547, n. 86; Section 56, p. 582, n. 71; Section 71, p. 593, n. 49; Section 216, p. 671, n. 35; Section 673, p. 916, n. 68.

Mandamus.

PEREMPTORY WRIT DENIED.

*Anderson, Gilbert & Wolfort* for relator.

(1) The compensation of assessors for work on the income tax is paid in fees for the items of work actually done by the assessor then in office. Secs. 13124, 12816, 12997, R. S. 1919. (2) Fees are creatures of statute and are to be paid as provided by the statute. State ex rel. v. Walker, 97 Mo. 162; State v. Wofford, 116 Mo. 220. The above statute expressly provides the fees for the work on the income tax, based upon the work actually done. (3) Where an officer obtains fees not allowable to him, he and his bondsman are liable to refund. State ex rel. v. Adams, 172 Mo. 1. (4) The payment to the wrong party does not deprive the right party of his fees. And if the Auditor refuses to audit a proper bill mandamus will issue. State ex rel. v. Walker, 97 Mo. 162; State ex rel. v. Wilder, 196 Mo. 429. (5) Mr. Gehner is not bound by Mr. Buder's certificate. Certificates can be contradicted by oral testimony. The Auditor is not concluded by certificates, nor is his allowance or disallowance conclusive. State ex rel. v. Wilder, 196 Mo. 428; Hallowell v. Page, 24 Mo. 593; Butler v. Barr, 18 Mo. 361. (6) There is no suggestion that Gehner was acting as Buder's agent. An official who is *functus officio,* cannot appoint his successor as his agent, to perform the duties of the successor. The defense pleaded is that Buder did the work and respondent relied upon the certificates he furnished. Having adopted that theory respondent should not now be permitted to change and pick technical flaws. Respondent pleaded that Buder did the work, and then failed to put Buder on the witness stand. (7) Respondent's return admitted the demand as pleaded in the petition, but seeks to change the figures. Apparently the bill on which demand was made, before this suit was filed, was misplaced. No attack was made upon the alternative writ or reply to the return, either by way of demurrer, motion to strike or in any other manner. Respondent's theory was that Buder did the work and furnished certificates, and therefore, relator cannot recover. Parties are bound by their theories. (8) This suit is not an attempt to litigate between rival claimants as suggested by respondent. If Buder has collected more fees than he is entitled to he and his surety have that question to settle with the State.

*North T. Gentry,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for respondent.

(1) In the extraordinary remedy of mandamus it is elementary (a) that relator must establish a clear legal right to the relief he seeks

through the writ, and (b) that the writ is never granted in doubtful cases. Adair Drainage Dist. v. Railroad Co., 280 Mo. 244; State ex rel. v. Thomas, 245 Mo. 65; State ex rel. v. Mo. Pac. Ry. Co., 280 Mo. 456; High on Extraordinary Legal Remedies, p. 17, sec. 12. (2) The burden rests upon one seeking relief by mandamus to show himself to have a clear legal right to the performance of the particular act which he seeks to compel. He must show that performance is an imperative duty, and the writ never lies where, as here, it appears that there is a question to adjudicate. State ex rel. Dolman v. Dickey, 280 Mo. 536; State ex rel. v. Stone, 269 Mo. 334; State ex rel. v. Becker, 291 Mo. 409; State ex rel. Buder v. Hackmann, 305 Mo. 342; State ex rel. v. Holman, 305 Mo. 195; State ex rel. v. Kansas City, 213 Mo. App. 349; State ex rel. v. Edwards, 206 Mo. App. 496; State ex rel. v. Bank, 174 Mo. App. 589; State ex rel. v. Seibert, 130 Mo. 222; Hunter v. Chandler, 45 Mo. 452; State ex rel. v. Clark, 52 Mo. 508. (3) The State Auditor, as the general accountant of the State, is empowered in all cases, not otherwise expressly provided for by law, to audit and settle all claims against the State, with power to reject any claim not deemed payable. In this capacity his acts involve the exercise of discretion, and are judicial in character. Secs. 13301, 13324, R. S. 1919; Goodrich v. Guthrie, 17 How. 284; Brashear v. Mason, 6 How. 92; State ex rel. v. Seibert, 130 Mo. 202; State ex rel. v. Oliver, 116 Mo. 188; State ex rel. Nolan v. Hackmann, 276 Mo. 173; State ex rel. Heller v. Thornhill, 174 Mo. App. 469; State ex rel. v. Thompson, 41 Mo. 14; Durant v. Whedon, 201 App. Div. (N. Y.) 196; People ex rel. v. Albany Co., 12 Johnson, 414; Runkle v. Commonwealth, 97 Pa. 328. Where the State Auditor, in good faith, examines and passes on a demand against the State, under his statutory powers as to the State's accountant, and pays the account to one who shows himself to be entitled to payment, and a conflicting claim is afterwards presented by another for the same, or a part of the same services, the Auditor is justified in refusing payment of the subsequent claim, and in these circumstances mandamus will not lie, as it would only amount to a litigation or an adjudication of the dispute between the claimants. Osborn v. Clark, 25 Pac. (Ariz.) 797; State ex rel. v. Police Jury, 97 So. 587; State ex rel. v. Oliver, 116 Mo. 188; State ex rel. v. Gentry, 112 Mo. App. 589; People ex rel. Grady v. Palmer, 44 N. Y. Supp. 578.

SEDDON, C.—This is an original proceeding in mandamus brought in this court by the relator, Fred Gehner, who is the incumbent of the office of Assessor of the City of St. Louis, to compel the respondent, State Auditor, to audit and approve for payment relator's claim against the State for statutory fees claimed to have been earned by relator in the making of the state income tax book in the city of St.

Louis for the year 1925. Relator was appointed to the office of Assessor of the City of St. Louis on April 24, 1925, and assumed the duties of said office on the morning of April 25, 1925. Relator succeeded, in said office, one William F. Buder, whose tenure of office expired at the close of the day of April 24, 1925. Relator contends that he performed the services upon which he bases his claim herein from and after April 25, 1925, and that no part of such services was performed by his predecessor in office, said William F. Buder. Relator's itemized account of the statutory fees to which he claims to be entitled to payment by the State is as follows:

Charges for entering 49,207 returns upon the
    assessment list at 3 cents each ..........$1,476.21        $1,476.21
To extending 49,207 returns at 3 cents each .. 1,476.21
To making tax book for Collector at ten cents
    per 100 words and figures (153,504) .....    153.50
Fifty cents per $100,000 valuation
    ($108,072,349) .......................    540.36
1/10 of 1% of total tax ($562,952.03) ......    562.95
Filing and safekeeping 49,207 returns at 1/2
    cent each .........................    246.03        2,979.05

Total amount claimed to be due relator from
    the State of Missouri ................            $4,455.26

This court, upon the filing of relator's petition herein, issued an alternative writ, to which respondent filed a return, in which he admits that he has refused to audit and approve the bill or account presented to him by relator, but denies that such refusal was wrongful or unlawful. The return denies that the State is indebted to relator in any amount; denies that relator performed any of the services alleged by relator to have been performed by him; and alleges that William F. Buder, the predecessor in office of relator, had presented to respondent an itemized bill or account, in the aggregate sum of $25,278.35, for the making and completion of the assessment of income taxes in the city of St. Louis for the year 1925, the truth and correctness of which account was duly certified by said Buder, and that such statement of account was accompanied by an aggregate abstract of the income tax assessments in the city of St. Louis, as set out in the income tax book of said city, for the period of January 1, 1925, to April 24, 1925, together with the original receipt of Edmond Koeln, Collector of the City of St. Louis, dated April 24, 1925, reciting that said collector had received of said William F. Buder, Assessor and Acting County Clerk of the City of St. Louis, the income tax book for said city covering the period of January 1, 1925, to April 24, 1925, and also accompanied by the original certificate of Louis Nolte, Comptroller of the City of St. Louis, certifying to the

truth and correctness of said aggregate abstract as having been completed by said Buder within the period of January 1, 1925, to April 24, 1925, as appeared by the records and files in the office of the said comptroller; that, upon the certification and filing of such matters and documents with respondent, showing the assessment to have been completed by said Buder, and showing the amount due thereon, respondent, acting in good faith and within his lawful right, and acting in reliance upon said certificates and verified account, paid to said Buder the full amount of fees that the State was obligated to pay for the income tax assessment in the city of St. Louis for the year 1925. Attached to the return, as exhibits thereto, are the verified statement of account filed by Buder with respondent, the aggregate abstract of income tax assessments, and the receipt and the certificate of the collector and comptroller, respectively, of the city of St. Louis, referred to and pleaded in the return.

Relator filed reply to the return, denying generally and specifically the allegations thereof, and further alleging that "whatever statement and account was filed by said William F. Buder with respondent and whatever aggregate abstract of the income tax in the city of St. Louis, Missouri, was filed with respondent for the period of January 1, 1925, to April 24, 1925, inclusive, is erroneous if same included the work done by this relator as above set out after he assumed office on April 25, 1925, and that if said Buder certified that said work was done by him prior to April 24, 1925, then the certificate of said Buder is in error, and that, if said abstract includes the work above set out and done by relator after April 24, 1925, said abstract is erroneous." Neither the petition for the alternative writ filed herein by relator, nor relator's reply to respondent's return to the alternative writ, charges either said Buder or respondent, by specific allegations, with actual or constructive fraud in the procurement of the allowance, and payment by the State, of Buder's verified account filed with respondent.

Testimony was taken before a special commissioner appointed by this court and the commissioner has returned to us the testimony so taken. Relator, Gehner, testified that, immediately upon taking charge of the office of assessor on April 25, 1925, he checked over with Mr. Sessinghaus, deputy assessor, the work done on the income tax book by Mr. Buder, his predecessor in office, and that Mr. Sessinghaus checked the income tax book and made a memorandum of the work done thereon by Buder, during the latter's incumbency; that Gehner kept no memorandum thereof, but Sessinghaus kept the same.

Witness Sessinghaus testified that he had been the deputy assessor under Mr. Buder and continued to act as such deputy under relator, Gehner; that, on April 25, 1925, witness checked the records

in the assessor's office of the work that had been done by Buder upon the income tax book of 1925; that there were filed in said office 67,442 individual income tax returns and 6,104 corporate returns, or an aggregate number of 73,546 returns; that of the returns so filed, 64,578 individual returns and 2,214 corporate returns had then been entered upon the tax book, or an aggregate of 66,792; that 21,958 individual returns and 2,381 corporate returns had then been entered on the assessment list, or a total of 24,339 returns, leaving a remainder of 49,207 returns which had not then been entered upon the assessment list and extended, which 49,207 returns were thereafter entered and extended under relator's direction; that witness had charge of such work for relator; that, after said 49,207 returns had been entered upon the assessment list and extended, they were filed in relator's office for safekeeping; that the valuation on the individual returns entered and extended by relator, Gehner, was $61,391,353, and the valuation on the corporate returns entered and extended by relator was $46,680,996, or an aggregate amount of $108,072,349; that the amount of the income tax figured upon the 49,207 returns entered and extended by relator was $562,952.03; that the number of words and figures entered by relator in the preparation of the tax book was 153,504; that the work of making, entering and extending the income tax assessment and tax computation was completed by relator on May 1 or 3, 1925; that the practice of the office was to make the entries on loose-leaf sheets, and as soon as a sheet of tax assessments was made, it was footed, balanced and sent to the collector; in other words, the several sheets were not held by the assessor until the complete assessment was finished, but the separate sheets were sent to the collector, as they were finished in order to facilitate the work of the collector in getting out the tax bills and notices.

Witness Heinrichsmeyer, chief clerk in the office of the collector, Koeln, testified that he received the income tax sheets from the assessor; that he had not received all the income tax sheets prior to April 25, 1925; that there was no record in his office of how many tax assessments were delivered to his office by Buder, or how many were delivered by relator, but that part of them were received from relator after Buder went out of office; that the tax sheets were received by the collector's office up to May 1 or 2, 1925; that the first collections thereon were made on May 7, 1925, and it usually required four or five days to get the tax notices out before collections commenced to come in; that the practice of the office had been to use loose-leaf books and, as soon as the assessor finished an assessment sheet, the assessor sent it to the collector, in order to facilitate getting out the tax bills and notices, and, when all the assessment sheets were delivered to the collector by the assessor, they were then bound

together with binders; that, after all of the income tax assessment sheets had been delivered to the collector by relator, Mr. Buder presented his certificate of the aggregate abstract of the income tax book to Mr. Koeln, the collector, and witness checked and verified the figures thereon, and Mr. Koeln, as collector, thereupon signed the receipt for the income tax book for the period of January 1 to April 24, 1925, and the receipt of the collector was then delivered to either Mr. Buder or Mr. Sessinghaus; witness had no personal recollection of the details respecting any certificates or receipts that were signed by Mr. Koeln, but it was witness's recollection, or impression, that the date of April 24, 1925, was not written in the receipt of the collector at the time it was signed by Mr. Koeln.

Witness Gunn, Deputy Comptroller of the City of St. Louis, testified that he signed the name of Louis Nolte to the certificate of the comptroller, certifying to the truth and correctness of the aggregate abstract of the income tax assessment book; that, while witness did not check the figures and amounts shown upon said abstract, he had the collector prove the amounts shown thereon, and thereupon witness signed the certificate on behalf of Mr. Nolte, the comptroller; that witness merely accepted as true, or correct, the dates inserted by the assessor in the comptroller's certificate; that the date of the comptroller's certificate, May 7, 1925, was written in the certificate with pen and ink by witness, and such date is in witness's handwriting; that, when Mr. Buder certified that the period covered by the abstract of assessments was from January 1, 1925, to April 24, 1925 (which period was also inserted in the comptroller's certificate signed by witness for Mr. Nolte, the comptroller), witness accepted such statement as a fact and had no personal knowledge thereof; that witness inferred, for the purpose of the comptroller's certificate and signature, that it was not necessary for him to investigate further, inasmuch as the comptroller merely certified to the amount of income tax assessments turned over to the collector for collection and the amount of business done in that office.

Timely objections were made by respondent to the introduction and reception of all of the foregoing oral testimony proffered by relator, upon the ground that such oral testimony was offered for the apparent purpose of contradicting and impeaching the public records, to-wit: the official certificates of Buder, assessor, and Nolte, comptroller, and the official receipt of Koeln, collector; that such public records are the best and only evidence of the facts recited therein; that such records are clear and unambiguous in their terms and recitals, and are required to be made by law, and hence such records are conclusive respecting the facts recited therein and they cannot be explained, contradicted or impeached by parol evidence. .

Respondent thereupon offered the testimony of witness Morse, deputy and income tax attorney in respondent's office, identifying the verified and itemized statement of account filed by Buder with respondent, together with the aggregate abstract of the income tax assessments in the city of St. Louis for the year 1925, certified by William Buder, assessor and acting county clerk, on April 24, 1925, and the receipt of Edmond Koeln, collector, dated April 24, 1925, and the certificate of Louis Nolte, comptroller, dated May 7, 1925. Witness Morse testified that Buder's verified and itemized statement of account, in the aggregate sum of $25,278.35, was audited and approved by him and paid by the State. All of said documents and certificates were put in evidence by respondent. Attached to the itemized statement of account filed by Buder with respondent is the following certificate or verification:

"State of Missouri,⎱ ss.
City of St. Louis, ⎰

"I, William F. Buder, Assessor of the City of St. Louis, in the State of Missouri, do hereby certify that the above and foregoing is a true, correct and complete copy of expenses actually paid by me for the assessment of the State Income Tax for the period beginning January 1st, 1925, and including April 24th, 1925.

"I certify further that I have fully and completely performed in compliance with the statutes of Missouri all services for which I have made charges in the above account.

"In Testimony Whereof, I have hereunto set my hand at my office in the city of St. Louis, Missouri, this twenty-fourth day of April, A. D. 1925.

"WM. BUDER,
"Assessor of City of St. Louis, Mo."

Attached to the aggregate abstract of income tax assessments filed by Buder with respondent are the following certificate and receipt:

"I, Wm. Buder, Assessor of the City of St. Louis, State of Missouri, and Acting County Clerk in the State Income Tax, do hereby certify that the above and foregoing is a true, complete and correct aggregate abstract of the Income Tax Book of said city of St. Louis, Missouri, for the period of January 1, 1925, to April 24, 1925, as the same appears from the Income Tax Book for said period in the year 1925.

"In Witness Whereof, I have hereunto set my hand at the city of St. Louis this 24th day of April, 1925.

"This office has no official seal.

"WM. BUDER,
"Assessor and Acting County Clerk
in the State Income Tax."

"Received of Wm. Buder, Assessor and Acting County Clerk of the City of St. Louis, State of Missouri, the Income Tax Book for said city for the period January 1, 1925, to April 24, 1925, of which the above and foregoing is a true and correct abstract. At office in the city of St. Louis, State of Missouri, this 24th day of April, 1925.

EDMOND KOELN,
Collector of the City of
St. Louis, Missouri."

Attached to another copy of said abstract of income tax assessments is the following certificate:

"I, Louis Nolte, Comptroller and Clerk of the County Court within and for the City of St. Louis, State of Missouri, hereby certify that the above and foregoing is a true and complete abstract of the assessment book of Income Tax assessed in said county for the period of January 1st, 1925, to April 24th, 1925, as fully and completely as the same appears from the income assessment book for the said period on file in my office.

"In Testimony Whereof, I have hereunto signed my name and affixed the seal of said county court. Done at this office in the city of St. Louis, in said county, on this 7th day of May, 1925.

(Seal)                          LOUIS NOLTE, Comptroller
(Clerk of County Court.)"

The foregoing constitutes the record before us.

Respondent, State Auditor, contends that, as the general accountant of the State, he is required and empowered by the statutes of the State to audit and settle all claims against the State, except such claims as are expressly required by law to be audited and settled by other officers or persons, and that he has the power and authority under the statutes to pass upon, reject and deny the payment of any claim against the State which he honestly deems not legally or rightfully payable by the State; hence, that the statutory official duties imposed and devolving upon respondent require the exercise of an especial discretion upon his part, and therefore such official duties are judicial, or at least quasi-judicial, in character, and cannot be controlled by mandamus, unless respondent's official decision, or action, is clearly and palpably arbitrary and wholly without legal reason. In considering and ruling respondent's contention, it is necessary for us to review and consider the several sections of our statute which prescribe the official duties and authority of the State Auditor, and which also prescribe the procedure to be followed by the State Auditor and by claimants, respectively, respecting the auditing, adjusting and settling of claims against the State, and the allowance or disallowance by the Auditor of such claims.

Section 13296, Revised Statutes 1919, provides: "The State Auditor shall be the general accountant of the State, and the keeper of all public account books, accounts, vouchers, documents, bonds and coupons, paid or redeemed, and all papers relating to the accounts and contracts of the State, and its revenue, debt and fiscal affairs, not required by law to be placed in some other office, or kept by some other person. . . . ."

The general duties of the State Auditor are prescribed by Section 13301, as follows: "He shall: First, audit, adjust and settle all claims against the State payable out of the Treasury, except only such claims as may be expressly required by law to be audited and settled by other officers or persons; second, draw all warrants upon the Treasury for money, except only in cases otherwise expressly provided by law; . . . ."

Section 13322 provides: "Persons having claims against the State shall exhibit the same, *with the evidence in support thereof,* to the Auditor, to be audited, settled and allowed, within two years after such claims shall accrue, and not thereafter."

Section 13324 provides: "Whenever the Auditor may think it necessary to the proper settlement of any account, he may examine the parties, witnesses and others, on oath or affirmation, touching any matter material to be known in the settlement of such account, and for this purpose may issue subpoenas, and compel witnesses to attend before him and give evidence, in the same manner and by the same means allowed by law to courts of record."

Section 13328 provides: "If any person interested shall be dissatisfied with the *decision* of the Auditor on any claim, account or credit, the Auditor shall, at the request of such person, *certify his decision,* with his *reasons* therefore, specifying the items rejected, if less than the whole, under the seal of his office, *and refer the same to the General Assembly.*"    (Italics ours.)

In an early case, Morgan v. Buffiington, 21 Mo. 549, the petitioner, Morgan, a member of the General Assembly, sought to compel, by mandamus out of this court, the respondent Auditor of Public Accounts to draw a warrant on the State Treasurer for an amount certified by the Speaker of the House of Representatives to be due Morgan as compensation for services as member of the House during an adjourned interim, or recess, of the General Assembly. This court ruled in that case that the certificate of the Speaker of the House of Representatives was not conclusive upon respondent Auditor, who had the power and authority under the statute to inquire into the facts, and mandamus was refused. In discussing the statutory duties of the Auditor, SCOTT, J., speaking for this court, said: "The Auditor of Public Accounts is an important officer, entrusted with the management of the revenues of the State. Whilst the Treasurer holds the

iron or brazen key of the Treasury, the Auditor holds the legal key, and it is through his instrumentality alone that money can lawfully be drawn from it. The State looks to him as the protector of her treasure. The powers confided to him are necessarily large, and as by his mismanagement the State may at any time be rendered unable to fulfil her pecuniary engagements, so there should be a power in him to prevent such a state of things. . . . It is for the interest of the State that there should be such a power in the Auditor. It is better that an individual should be delayed in the receipt of the compensation due for his services, than that a door should be open by which the public treasury would be subjected to exactions wholly unwarranted by law. Ours is a government of checks and stays. These are necessary incidents to the freedom of our institutions. They are a part of the price we pay for the liberties we enjoy.''

In State ex rel. Daily v. Thompson, State Auditor, 41 Mo. 14, relator applied to this court for a writ of mandamus upon the State Auditor to require him to audit and settle a bill of court costs, and to draw his warrant therefor. A demurrer was filed to relator's petition, which demurrer this court sustained. In sustaining the demurrer, we said: ''By the express terms of the statute the Auditor is made 'the general accountant of the State.' He is required to 'audit, adjust and settle all claims against the State, payable out of the Treasury, except only such claims as may be expressly required by law to be audited and settled by other officers and persons'—G. S. p. 86, secs. 10 and 13, ch. 10. The 31st section of the same chapter provides as follows: 'If any person interested shall be dissatisfied with the decision of the Auditor on any claim, account or credit, the Auditor shall, at the request of such person, certify his decision, with his reasons therefor, specifying the items rejected, if less than the whole, under the seal of his office, and refer the same to the General Assembly.' These preliminary matters have been set out for the purpose of showing the extent of the powers conferred upon this officer by law. In the very nature of the case they are large, and cover every class of claims against the State, unless otherwise expressly provided for by law. The wording of the statute is peculiar, and leaves no room to imply the power of any other officer or person. His duties and responsibilities in guarding the expenditure of the money belonging to the State are so weighty, and the necessity for their proper performance so directly pressing upon him, as to leave no room for implication. . . . This is a power, of course, which the Auditor cannot exercise in an arbitrary manner, so as to defeat the payment of a just claim against the State. The law expressly provides for a reference of the matter to the General Assembly in every case where there is a refusal on the part of the auditor to allow the demand and draw his warrant therefor. This may

not be as speedy a way of obtaining justice as a party might desire, but still it is the way pointed out by the statute, and which he may pursue or not at his pleasure.''

In State ex rel. Keck v. Seibert, State Auditor, 130 Mo. 202, relators applied to this court for the issuance of our writ of mandamus to compel respondent State Auditor to allow, audit and settle certain cost bills for witness fees, which bills or claims had been assigned to relators and which relators had presented to the State Auditor for allowance, and allowance had been refused by the Auditor. In denying the peremptory writ prayed by relators, this court, in banc, said: ''Furthermore, Section 8606, Revised Statutes 1889, makes ample provision for the proper settlement of any account against the State, authorizing the Auditor to subpoena witnesses, compel their attendance and to examine them and others on oath touching any matter material to be known in the settlement of such account in the same manner and by the same means employed by courts of record. This section constitutes the Auditor a quasi-judicial officer for the adjustment of accounts presented him to be admitted [audited?]. *This being the case furnished of itself conclusive reason for denying relief by mandamus.* We therefore deny the peremptory writ.'' (Italics ours.)

The case of State ex rel. v. Oliver, 116 Mo. 189, was a proceeding in mandamus, originally commenced in the Circuit Court of Greene County, to compel defendant Oliver, judge of the Criminal Court of Greene County, to certify to the State Auditor the fee bills of several witnesses summoned to attend the trial of a felony case in that court. The writ was made peremptory by the circuit court, and defendant appealed to the St. Louis Court of Appeals, where the judgment below was reversed, but the cause was certified to this court by the Court of Appeals. This division of this court therein ruled that the propriety and correctness of the ruling or decision of defendant, refusing to certify to the State Auditor the fee bills of the several witnesses, could not be reviewed by mandamus, and the judgment of the Court of Appeals was affirmed. We there said: ''It is well settled that *mandamus* will lie against a public officer to compel the performance of a mere ministerial act, but will not lie to control a discretionary power. If then the duties of the defendant in auditing and certifying fee bills to the State Auditor were not simply ministerial, but required the exercise of any especial discretion or judgment and he acted in the premises according to his judgment, *though erroneously,* the writ was improvidently issued. [High on Extraordinary Legal Remedies, sec. 102; State ex rel. v. Marshall, 82 Mo. 486; State ex rel. v. County Court, 83 Mo. 540; State ex rel. v. Cramer, 96 Mo. 75.]'' (Italics ours.) We then ruled that the statutory duties of defendant were not merely ministerial, but required

the exercise of an especial discretion, and hence mandamus would not lie. To similar effect is State ex rel. v. Gentry, 112 Mo. App. 589.

The rule is thus aptly stated in 38 Corpus Juris, 593: "In the absence of some statute expressly changing the rule, mandamus will not lie to control or review the exercise of the discretion of any court, board, tribunal, or officer, when the act complained of is either judicial or quasi-judicial, unless it clearly appears that there has been an abuse of discretion on the part of such court, board, tribunal, or officer. 'To do so (it has been said) would be to substitute the judgment and discretion of the court issuing the mandamus for that of the court or officer to whom it was committed by law.' This principle, of course, applies with full force and effect, *however clearly it may be made to appear what the decision ought to be, or however erroneous the conclusion reached may be, and although there may be no other method of review or correction provided by law.* While mandamus may be invoked to compel the exercise of discretion, it cannot compel such discretion to be exercised in any particular way." (Italics ours.) .

Mr. High, in his standard treatise on Extraordinary Legal Remedies (3 Ed.), after stating the general rule to the effect that, insofar as the duties of public officers intrusted with the auditing and payment of accounts are ministerial in their nature and unconnected with the exercise of any especial discretion or judgment, they are properly subject to the control of the courts, then says, in Section 102, page 110: "Where, however, auditing officers intrusted by law with the duty of passing upon and determining the validity of claims against a state, are vested with powers of a discretionary nature as to the performance of their duties, a different rule from that above stated prevails. In such cases the fundamental principle denying relief by mandamus to control the exercise of official discretion applies, and the officers having exercised their judgment and decided adversely to a claimant, mandamus will not lie to control their decision or to compel them to audit and allow a rejected claim. The remedy, if any, for such a grievance must be sought at the hands of the legislature, and not of the courts. Especially will relief by mandamus be refused in such case when the party aggrieved has a plain and adequate remedy by appeal from the refusal of the auditing officer to allow his claim. And when a state comptroller is vested with certain discretionary powers in the adjusting and settlement of demands against the State, he cannot be compelled to issue his warrant for the payment of a particular sum. Nor will the writ go to compel an officer to audit a claim unless it is clearly his duty so to do."

Under our state income tax statute, the State is divided into 115 assessment districts, corresponding with the 114 counties of the State

and the city of St. Louis, and the assessors of the several counties and the city of St. Louis are made the assessors of the income tax in the respective districts in which they reside. [Sec. 13115, R. S. 1919.] The assessors of the income tax are required to keep a separate book for income taxes, known as the "income assessment book." [Sec. 13117.] The assessor is required to complete the assessment of incomes on or before the first day of March of each year (now changed to the fifteenth day of March by Act of 1925, Laws 1925, page 371) and to *forthwith* certify the result to the county clerk (whose functions and duties respecting the income tax are performed by the assessor in the city of St. Louis) and said county clerk (or Assessor of the City of St. Louis) shall compute and enter such income taxes upon the tax book and deliver the same to the collector of revenue on or before the first day of May thereafter. [Sec. 13119.] The several assessors of income taxes are compensated for the services performed by them under the income tax statute in like manner and in like amounts as for the assessment of other taxes, which compensation and fees are paid by the State. [Sec. 13124.] The fees payable by the State for the various services in the assessment and computation of the income taxes are fixed and prescribed by Section 12997, Revised Statutes 1919. The collector of the revenue in each assessment district is required to subscribe a receipt for the income tax book, indorsed on the aggregate abstract thereof, which aggregate abstract, with such receipt of the collector indorsed thereon, properly certified and authenticated, shall be transmitted by the clerk of the county court (or the Assessor of the City of St. Louis) to the State Auditor. [Sec. 12873.] The county clerk (or the Assessor of the City of St. Louis) shall make a complete statement of the income assessment and taxes charged and forward the same to the State Auditor. [Sec. 12869.] These, briefly, are the several procedural steps prescribed by the statute pertaining to the assessment of incomes, the computation of the income taxes and the certification of the same to the State Auditor, within the assessment district of the City of St. Louis, and the several assessment districts of the State.

It appears from the record before us that, pursuant to the prescribed statutory procedure, the said William Buder, relator's predecessor in the office of Assessor of the City of St. Louis, forwarded to, and filed with, respondent State Auditor "the aggregate abstract of income tax in the city of St. Louis as set out in the Income Tax Book of said city for the period of January 1, 1925, to April 24, 1925, inclusive," showing upon the face of said aggregate abstract that there were 73,546 returns of income filed, assessed at the aggregate amount of $183,716,676, and that the income taxes computed thereon amounted in the aggregate to $1,837,066.76. Indorsed on, or appended to, said aggregate abstract is the certificate of said William Buder,

as assessor and acting county clerk in the matter of assessment of the state income tax in the city of St. Louis, dated and purporting to have been subscribed on April 24, 1925, and reciting that the same "is a true, complete and correct aggregate abstract of the Income Tax Book of said city of St. Louis, for the period of January 1, 1925, to April 24, 1925, as the same appears from the Income Tax Book for said period in the year 1925," and also indorsed upon, or attached to, said aggregate abstract is the receipt of Edmond Koeln, Collector of the City of St. Louis, purporting to be subscribed by said collector on April 24, 1925, acknowledging the receipt by said collector from said William Buder, Assessor and Acting County Clerk of the City of St. Louis, of "the Income Tax Book for said city for period of January 1, 1925, to April 24, 1925, of which the above and foregoing is a true and correct abstract." There was also forwarded to, and filed with, the respondent State Auditor, a copy of said aggregate abstract to which was appended, or indorsed thereon, the certificate of Louis Nolte, Comptroller of the City of St. Louis, dated May 7, 1925, certifying that "the above and foregoing is a true and complete abstract of the assessment book of Income Tax assessed in said county (city) for the period of January 1st, 1925, to April 24th, 1925, as fully and completely as the same appears from the income assessment book for the said period on file in my office." The record herein also shows that said William Buder presented to, and filed with, respondent State Auditor, at or about the same time said certificates, collector's receipt and aggregate abstract were filed with respondent, an itemized and verified statement of account, or claim, against the State of Missouri, "for expenses incurred and compensation for services rendered (by William. F. Buder) as Assessor and Acting County Clerk for the City of St. Louis in the operation of the state income tax for the period of January 1st, 1925, to April 24th, 1925, inclusive," in the aggregate amount of $25,278.35. Indorsed on, and appended to, said itemized claim was the certificate or verification, of said William Buder, Assessor of the City of St. Louis, purporting to have been subscribed and dated on April 24, 1925, certifying "that the above and foregoing is a true, correct and complete copy of expenses actually paid by me for the assessment of the State Income tax for the period beginning January 1st, 1925, and including April 24, 1925. And I certify further that I have fully and completely performed, in compliance with the statutes of Missouri, all services for which I have made charges in the above account." With the foregoing documentary evidence, statutory certificates, collector's receipt and aggregate abstract before him, respondent State Auditor audited and settled, and the State paid in full, the verified claim of said Buder in the aggregate sum of $25,278.-35. The State having paid in full to said Buder the statutory fees

upon the basis of the full and complete assessment of incomes within the assessment district of the city of St. Louis for the year 1925, respondent State Auditor has refused to audit, settle and allow, and has rejected and disallowed, the claim of relator against the State, covering a part of the services which were included in the verified claim of Buder.

It is not charged in relator's petition herein that respondent (or said Buder) was guilty of any actual or constructive fraud in the auditing, settlement and payment of Buder's claim against the State for services claimed to have been rendered by him in the making of the income tax assessment. Nor is it specifically charged in relator's petition herein that respondent has arbitrarily, and without legal reason, refused to audit, settle and allow relator's claim. While respondent's return to the alternative writ admits his refusal to audit and approve the bill or claim presented to him by relator, the return denies that such refusal was wrongful or unlawful, and specifically pleads respondent's reasons for the refusal and disallowance of relator's claim. Does, therefore, the State Auditor, who, apparently in good faith and within the discretionary powers and duties imposed upon him by statute, examines, audits and allows a demand or claim for compensation for services, made by a claimant against the State, upon statutory documentary evidence presented to him, as disclosed by the record herein, owe the *imperative duty* to another claimant, such as relator herein, to audit, settle and allow, and to permit the State to pay, another and subsequent claim for compensation for the same services, or part thereof? We think not. In our opinion, the statute (Secs. 13296 and 13301, R. S. 1919), defining and imposing the duties of the State Auditor, requires of him the exercise of an especial discretion in the auditing, settling and allowing of all claims against the State payable out of the public treasury. The statute (Sec. 13322) further requires all claimants to exhibit their claims, *with the evidence in support thereof,* to the State Auditor, to be audited, settled and allowed, within two years after such claims shall accrue, and the Auditor is given the power to examine the parties, witnesses, and others, on oath, touching any matter material to the settlement of any such account or claim, to issue subpoenas and to compel witnesses to attend before him and give evidence, *in the same manner and by the same means allowed by law to courts of record.* [Sec. 13324.] Not only that, but every dissatisfied claimant is afforded the right or remedy of an appeal to the General Assembly from the *decision* of the State Auditor, who is required, at the request of a dissatisfied claimant, to certify and refer his *decision,* with his reasons therefor, to the General Assembly. (Sec. 13328.)

It appears to us, from the precise language of the statute and the duties and obligations imposed upon respondent thereby, that re-

316 Mo.—75.

SUPREME COURT OF MISSOURI, VOL. 316. [*October Term*,

spondent's acts and decisions thereunder, in the allowance or disallowance of claims made against the State, necessarily, and as a general rule, involve the exercise of discretion upon his part and invest him with quasi-judicial functions and duties. That being true, this court cannot control or direct respondent's action, or quasi-judicial discretion, unless it be clearly shown that respondent is acting arbitrarily and without legal reason, or unless it clearly appear that respondent has abused his discretion. For us to control or direct respondent's quasi-judicial discretion (absent an arbitrary and clearly unlawful, or unjustifiable, action on his part) would mean for this court to impose our own judgment and discretion for that imposed upon respondent by the legislative department of this State, the assumption and arrogation of which power on our part would be to render abortive and ineffectual the statute prescribing the powers and duties of the State Auditor.

The rule is general that the applicant for relief by mandamus must prove that he has a clear, unequivocal, specific and positive right to have performed the thing, or action, demanded, and the remedy by mandamus will not lie if the right is doubtful. [State ex rel. v. Dickey, 280 Mo. 536, 548; State ex rel. v. Stone, 269 Mo. l. c. 342; State ex inf. v. Gas Company, 254 Mo. l. c. 532.] Furthermore, a ministerial duty may be enforced by mandamus only when it is shown that the duty is one in respect to which nothing is left to discretion. [State ex rel. v. Hudson, 226 Mo. 239, 265.] The record herein does not disclose what evidence, if any, relator offered in support of his claim at the time he exhibited his claim to the respondent to be audited and settled. However, relator, by his pleadings and proof herein, has neither alleged nor proved that he transmitted to, and filed with, respondent State Auditor, at or prior to the time of the rejection and disallowance of his claim, a certified and authenticated aggregate abstract of the income tax book, with the collector's receipt for such income tax book indorsed thereon, as apparently required by the sections of the statute hereinabove referred to. There being nothing in the record before us to show what evidence relator offered (if, indeed, relator offered any evidence whatever) at the time of the exhibition, and the rejection and disallowance of his claim by respondent, we cannot say that respondent acted arbitrarily and wholly without reason, or abused his discretion, in rejecting and disallowing the claim exhibited by relator; in other words, relator has not shown, by his pleadings or proof, that he has a clear, unequivocal and specific right to the allowance of his claim by respondent and its payment by the State.

We are constrained to conclude and to rule herein that respondent, under the facts and circumstances in evidence, did not owe to relator the *imperative* duty to allow, and order to be paid, relator's claim,

and, furthermore, that the duty or obligation imposed upon respondent by the statute respecting the auditing, settlement and allowance of relator's claim against the State involves the exercise of an especial discretion upon respondent's part, and such statutory duty, unless exercised arbitrarily and wholly without legal reason, is quasi-judicial in character and cannot be controlled by mandamus. It does not appear from the record before us that respondent has acted arbitrarily and wholly without legal reason, or that respondent has abused his discretion, in refusing to allow relator's claim herein. The statute affords to relator the right or remedy of an appeal from the decision of the respondent to the General Assembly had relator seen fit to avail himself of such right or remedy. Apparently, so far as the record herein discloses, relator has not seen fit to avail himself of the remedy by appeal afforded by the statute, but he is seeking another and different remedy by resorting to this court for the aid of our extraordinary writ, the granting of which writ is always discretionary. It may be that the remedy by appeal to the General Assembly afforded to relator by the statute is not his only remedy; but be that as it may, relator, in our opinion, has not clearly established by his proof herein that he has a clear legal right to the relief he seeks through the discretionary writ applied for by him. [High on Extraordinary Remedies (3 Ed.) sec. 9, p. 12.] There may be cases, such as State ex rel. v. Walker, 97 Mo. 162, and State ex rel. v. Wilder, 196 Mo. l. c. 429 (cited by relator), wherein the uncontroverted or admitted facts made it appear to be the imperative duty of the State Auditor to audit and settle a claimant's account, and wherein this court has granted the aid of our peremptory writ of mandamus for the reason that it conclusively appeared from relator's proof, or from the admissions of respondent, that relator has a clear, unequivocal and positive right to the relief sought. Such facts, in our opinion, do not appear in the instant proceeding. Other interesting questions are presented in the briefs of the respective parties herein, but in view of our conclusion that mandamus will not lie to control or direct respondent's quasi-judicial discretion, under the facts and circumstances in evidence, we find it unnecessary to discuss or rule such questions.

It follows, from what we have said, that our alternative writ herein was improvidently issued, and, therefore, that the peremptory writ must be denied and the respondent discharged. It is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.